LYDA HODGSON, Respondent, *v.* THE PREFERRED ACCIDENT INSURANCE COMPANY OF NEW YORK, Appellant.

Second Department, February 15, 1918.

Insurance — action on policy of accident insurance — trial — submission to jury of question of suicide not pleaded as defense — verdict — special verdict — reconvening of jury and submission of questions after general verdict — evidence as to suicide — application of Insurance Law, section 107, as to printing of exceptions in policies.

In an action under a policy of accident insurance to recover for the death of the assured, plaintiff alleged that death was caused by " external, violent and accidental means " within the terms of the policy, and the answer denied such allegation and alleged that death was caused by disease as well as by the inhaling of gas or taking of poisons, both being within exceptions named in the policy. The theory of the plaintiff was that death was caused by an overdose of opium or morphine accidentally taken although the immediate cause was pneumonia.

*Held,* that although the defendant did not plead suicide as a defense under the exception in the policy, yet as the burden was upon the plaintiff to establish that the death was accidental, *i. e.,* not suicidal, it was not error to submit to the jury the question of suicide, that issue being necessarily involved in the question of accidental death;

That upon the submission to the jury of the questions whether the assured died of a disease not caused by a narcotic poisoning, whether the taking of poison was the proximate cause of death, and whether, if poison was taken, it was accidental or intentional, their special verdict thereon constituting a disagreement upon the vital issue whether or not the death was caused by accidental means should have been permitted to prevail over a prior general verdict for the defendant;

That the action of the trial justice in reconvening the jury after a general verdict to reconsider the questions submitted and find a special verdict, although very extraordinary, was within his discretion;

That the natural presumption against suicide, together with the facts proven, constituted some evidence upon the point that the assured took the poison accidentally.

Section 107 of the Insurance Law, as added by chapter 155 of the Laws of 1913, providing that exceptions in a policy of insurance shall be invalid if printed in a less prominent type than the beneficial clauses therein, applies to renewals, subsequent to its enactment, of expired policies, executed prior thereto.

APPEAL by the defendant, The Preferred Accident Insurance Company of New York, from an order of the Supreme Court, made at the Kings County Trial Term and entered in the office of the clerk of the county of Kings on the 10th day of May, 1917, setting aside the verdict of a jury in defendant's favor and granting plaintiff's motion for a new trial and further denying defendant's motions to dismiss the complaint made at the close of plaintiff's case and at the close of the entire case.

*Harry A. Talbot* [*George W. Sill* with him on the brief], for the appellant.

*Frederick W. Sparks* [*Leonard J. Reynolds* with him on the brief], for the respondent.

MILLS, J.:

The action was brought by the plaintiff under a policy of accident insurance to recover for the death of Willard H. Hodgson, she being the beneficiary thereunder. The complaint, as was necessary, alleged that the death was caused by "external, violent and accidental means," which cause was within the terms and obligations of the policy. The answer denied such allegation and pleaded certain defenses — that is, that the death was caused by disease and as well by the inhaling of gas or taking of poison, both being within exceptions named in the policy. The theory of the plaintiff was that the death was caused by an overdose of some poison, probably opium or morphine, accidentally taken, although the immediate cause was pneumonia.

The evidence for the plaintiff was given by the decedent's physician and was to the effect that the physician, who had previously attended him for various slight illnesses, was on

April 6, 1915, called to him and found him in a condition (describing the symptoms) which indicated that he had taken an overdose of opium or morphine; that the physician treated him, but that pneumonia set in on the eighth of that month and he died on the eleventh; and that the physician was certain that the death was caused by the taking of the poison.

The defendant offered no evidence.

The charge placed upon the plaintiff the burden of proving that the death was accidental — that is, that the morphine or opium, if taken, was taken accidentally, and the court left it to the jury as a question of fact for them to determine that issue. The jury returned a verdict for the defendant in the late afternoon of October 19, 1916, and the court adjourned until the following morning, the jurors apparently being dismissed and allowed to separate after plaintiff had moved for a new trial. When the court reconvened the following morning, there was discussion between court and counsel with the result that the court, over the objection and exception of defendant's counsel, recalled the jurors into the box and submitted to them three questions, with the direction that they should retire, consider and answer each of them in the affirmative or negative, and return their answers in writing to the court, but not reconsider their verdict already rendered. The jury so acted, and after some hours returned into court and filed a paper, which was received as a special verdict over the objection and exception of defendant. The questions so submitted were the following:

" No. 1. Did the deceased die of a disease not caused by a narcotic poisoning?

" No. 2. Was the taking of poison the proximate cause of the death of deceased?

" No. 3. If you find poison was taken by deceased, was it done accidentally or intentionally? "

And the special answer or verdict was the following:

" We, the undersigned Jurors, are unable to reach a unanimous decision as to all the questions submitted, the majority *believing*, without *knowing*, that the poison was the proximate cause of the death of the deceased, the minority *believing*, without *knowing*, that the pneumonia was not induced by the poison.

" As to the third question, we all agree that in the absence of any evidence that the deceased took the poison, either accidentally or with the intent to commit suicide, it is impossible for us to answer it, either in the affirmative or in the negative. In other words, there being grave doubts in everybody's mind whether the poison was taken accidentally or not, we understood from the charge of the Court that a verdict for the defendant had to be rendered."

The plaintiff renewed her motion for a new trial, and some days later the learned trial justice filed an opinion granting the motion. From the opinion it is evident that he granted the motion for the reason that he thought that the comments of the court and counsel had probably confused the jury upon the question of suicide, as the defendant had not pleaded suicide or attempted to prove it. (100 Misc. Rep. 155.)

Upon this appeal appellant contends that while it is true that it did not plead suicide as a defense under the exception in the policy, yet, as the burden was upon the plaintiff to establish that the death was accidental, *i. e.*, not suicidal, there was no possible harm to the plaintiff in the submission to the jury of the question of suicide — in other words, that that issue was necessarily involved in the comprehensive one of accidental death.

I think that this contention is entirely sound, and that the learned trial justice was unnecessarily apprehensive that he had upon that point misled the jury. I think, in other words, that that objection was after all merely technical and not substantial. Still, I think that his decision in granting the motion for a new trial was right for another reason, viz., that the special verdict revealed a disagreement of the jury upon the vital issue whether or not the death was caused by " accidental means." It is, of course, plain that the response by the jury to the first and second questions was merely the statement of the disagreement of the jurors thereon. Their response to the third question is not so clear, but I think that it should be regarded also as a mere disagreement. The controlling statement therein is: " It is impossible for us to answer it, either in the affirmative or in the negative." The rest of the response is merely an attempt to give the reason for such inability and why, on account

of such inability, they, under their conception of the charge, had brought in their general verdict for the defendant. Of course, it was a misconception of the charge for them to consider that, if they were unable to agree upon either an affirmative or a negative answer to that question, they should give a verdict for the defendant. In order to do that they must agree to answer at least one of the three questions submitted in the negative. Their written response was a statement that they were unable to answer either of the three either way. Of course, want of sufficient affirmative proof would be ample ground for a negative answer to either, but the statement that there were " grave doubts in everybody's mind " as to one of those questions, did not convert their explicit statement that they were unable to answer that question either way into a negative answer thereon.

The special verdict should have been permitted to prevail over the general. I conclude, therefore, that the trial court properly set the latter aside and granted a new trial, for the reason that really no verdict had been reached.

As to the action of the trial justice in sending the jury out to reconsider the case and find a special verdict after they had agreed upon a general verdict for the defendant, the appellant here presents no point claiming that such action was unauthorized, although it did at the trial object to it. I think that such action, although very extraordinary, was within the discretion of the trial justice.

The appellant also contends that its motion to dismiss should have been granted for the reasons, (a) that there was no affirmative proof that the decedent took the poison accidentally; and (b) that even in the view that he did so take it, the case falls within an exception in the policy against death caused by the taking of poison.

As to the first such contention, I think that the natural presumption against suicide, even with the few facts proven as above stated, constituted some evidence upon the point. The trial justice in effect so held, and I think correctly.

As to the other such contention, it appears that the original policy was issued in March, 1903, for a term of six months, and that it was extended by various renewals, the last being

for one year from March 12, 1915, also that the policy contained no provision as to its continuance or renewal beyond the said stated term. The death was on April 11, 1915. Statutes were passed in 1910 and 1913 enacting section 107 of the Insurance Law, which was in force when. the last renewal was made and when the death occurred. (See Laws of 1910, chap. 636, and Laws of 1913, chap. 155, adding to Insurance Law [Consol. Laws, chap. 28; Laws of 1909, chap. 33], § 107.) The effect of that section was to make any such exception invalid if printed in the policy in a less prominent type than the beneficial clauses therein were printed. The exceptions in this policy were printed in such less prominent type. The renewals were all made by brief receipts not repeating the terms or exceptions of the policy. At the trial the plaintiff contended that the inhibition of such section 107 applied to such exception in question, and the defendant contended that it did not apply to such a renewal, but only to an entirely new policy issued after the enactment of the section. The learned trial justice sustained the view and contention of the plaintiff. It appears to be conceded that there is no prior decision directly in point upon the question. The appellant's brief quotes an announcement made by the then Superintendent of Insurance of this State on November 19, 1910, and claims that it sustains defendant's such contention here. I do not so regard it. It appears to me to go no further than to advise that, notwithstanding the new legislation, former policies may be renewed without the issuance of new ones. It does not appear to me to involve any determination of the question here presented. Even if it did, I would not regard it as of sufficient force to prevail over the weight of the argument that the new provision of section 107 was for the benefit and security of policyholders and, therefore, should be liberally construed and so held to apply to renewals of expired contracts. It has upon other points been held by this court that in general each such renewal is a separate and distinct contract. (*Campbell Milk Co.* v. *U. S. Fidelity & Guaranty Co.*, 161 App. Div. 738.) It is unnecessary here to determine or consider whether or not the same doctrine would apply to a case where the original policy had by its terms given

to the assured a right to the renewal in force at the time of the death. No difficulty in the application of such rule is perceived. I think, therefore, that the trial justice correctly denied defendant's motion to dismiss. Hence, I advise that the order appealed from be affirmed, with costs.

RICH, PUTNAM and BLACKMAR, JJ., concurred; THOMAS, J., concurred in the result.

Order affirmed, with costs.