JULIUS L. SCHWARTZ, Plaintiff, *v.* COMMERCIAL TRAVELERS MUTUAL ASSOCIATION OF AMERICA, Defendant.

Supreme Court, New York County, May —, 1928.

Insurance — accident insurance — hemorrhage caused by picking scar on inside of nose — hemorrhage was result of accident.

A hemorrhage in plaintiff's nose, which was caused when he picked some scar tissue from the inside of his nose, constituted an accident and resulted from accidental means, within the meaning of the term "accident" as used in an accident insurance policy, and, therefore, the plaintiff is entitled to recover on the policy.

ACTION to recover under an accident insurance policy.

*Greenbaum, Wolff & Ernst* [*John J. Wildberg* of counsel], for the plaintiff.

*Moses, Nehrbas & Tyler* [*H. C. Moses* of counsel], for the defendant.

BIJUR, J. Plaintiff sues to recover under an accident insurance policy because of a hemorrhage. He had for some time felt a slight irritation in his nose and had been in the habit of picking it,

removing thereby some fragmentary scar tissue. What is medically known as an " ulcer " resulted and this ultimately produced a perforation of the septum. The hemorrhage occurred when he again picked this scar or bit of tissue and it was found by the physician in attendance to have come from the edge of the perforation. Two points are urged by the defense: *First*, that the occurrence involved was not an accident, and *second*, that if an accident the hemorrhage which resulted was not " caused *solely* and exclusively " by the accident (as provided in the policy). As to the occurrence being an accident, of course if we visualize an accident from the standpoint of lurid journalistic headlines, the incident in question was unworthy of mention or consideration. But in the language of CARDOZO, J., for the Court of Appeals in *Lewis* v. *Ocean Accident & G. Corp.* (224 N. Y. 18, 21): " ' Probably it is true to say that in the strictest sense and dealing with the region of physical nature, there is no such thing as an accident' (HALSBURY, L. C., in *Brintons* v. *Turvey*, L. R. 1905, A. C. 230, 233). But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man (*Brintons* v. *Turvey, supra; Ismay, Imrie & Co.* v. *Williamson*, L. R. 1908, A. C. 437, 440). Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test to be applied by courts." In that case the terms of the policy were substantially the same as in the one at bar. The insured had a pimple on his lip. " There is testimony from which a jury might find that the pimple had been punctured by some instrument, and that the result of the puncture was an infection of the tissues. If that is what happened, there was an accident." The theory is elaborated in *Matter of Connelly* v. *Hunt Furniture Co.* (240 N. Y 83), in which an undertaker's helper permitted some gangrenous matter to enter a slight cut in his hand and later " scratched a pimple with the infected finger." The court said (p. 85): " Germs may indeed be inhaled through the nose or mouth * * *. Our mental attitude is different when the channel of infection is abnormal or traumatic, a lesion or a cut." In *U. S. Mutual Accident Association* v. *Barry* (131 U. S. 100) I think it may be said that the Supreme Court of the United States adopted even a more liberal definition of an accident under the terms of a similar policy. Some persons jumped from a platform four or five feet high to the ground and alighted safely. The deceased jumped last. The complaint averred that the jar from the jump produced a puncture of the duodenum,

resulting in death.   Said the court: "The jury were, on all the evidence, at liberty to say that it was an accident that he [deceased] did not" alight safely.   In my opinion the *Lewis* case, particularly as amplified by the *Connelly* case, is determinative that the hemorrhage here constituted an accident, or resulted from accidental means.   The second contention of the defendant, namely, that the hemorrhage was not "caused solely and exclusively by the accident," offers, perhaps, greater difficulty.   Considered from the purely philosophic standpoint, and accepting the general theory of causation, we cannot well avoid assent to the doctrine suggested in Bacon's "Maxims of the Law," referred to in *Lawrence* v. *Accidental Insurance Co.* (L. R. [1881] 7 Q. B. Div. 216): "That there is not in truth a single cause of anything but that we cannot in the law go back to the cause of causes, but must content ourselves with the immediate cause."   Since, therefore, there is philosophically no sole and exclusive cause of any effect, one might feel justified, were it an original proposition, in holding that this requirement added nothing to the application of the doctrine of legal causation, which is in itself troublesome enough.   It has been the subject of elaborate consideration in recent legal literature.   (See Professor Jeremiah Smith's "Legal Cause in Actions of Tort," 25 Harv. Law Rev.103, 126, Dec.1911; Professor Beale's "Proximate Consequences of an Act," 33 id. 633, March, 1920; Professor James Angell McLaughlin's "Proximate Cause," 39 id. 149, Dec. 1925; "Rationale of Proximate Cause," by Professor Leon Green, 1927, and the rather elaborate article by Professor Edgerton, "Legal Cause," 27 U. of P. Law Rev. 343, 349, May, 1924.)   All these writers agree that the formulation of a precise rule is wholly impossible.   Even the terminology of attempted distinctions raises doubt and dispute — "substantial factor," "active and passive," "direct and indirect," "condition" as contrasted with "cause"— are all debatable terms which leave the real problem unsolved.   Professor Edgerton contents himself with using the term "legal cause" as indicating the goal at which we are aiming, but concedes that the ascertainment of that term must be intuitive rather than logical or philosophical.   Professor Green questions the soundness of the entire doctrine of proximate cause.   Innumerable illustrations in the shape of decided cases indicate how diverse are the applications of any supposed rules of legal causation were we remitted to that standard alone.   But fortunately the test here is not what doctrine of causation shall be applied in a whole field of the law like that of torts, but rather what is the intention of the parties to a written contract?   (See *Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47.) As a practical matter the courts have striven to give the language

a definite meaning as applied to particular cases — with indifferent success it must be admitted. One example is typical: In *Wadsworth* v. *Canadian R. Accident Ins. Co.* the trial court found that the death of the assured resulted from a fit which caused the upsetting of a lantern whereby the building in which the assured was was set on fire. The Divisional Court (26 Ont. L. 55; 3 D. L. R. 668) reversed and held that the fire and not the fit caused the death. On appeal to the Appellate Division of the Ontario Supreme Court (28 Ont. L. 537; 13 D. L. R. 113) the determination of the Divisional Court was reversed, and it was held that the death was to be attributed to the fit. This view was accepted by the Supreme Court of Canada (49 Can. S. C. 115; 16 D. L. R. 670). In none of these courts was the decision unanimous. In *Penn* v. *Standard Life Ins. Co.* (160 N. C. 399), where the accident affected the plaintiff's eyesight, which was already seriously impaired by a cataract, it was held that recovery was barred, the court formulating three rules which have been restated with approval in *Smith* v. *Massachusetts Bonding & Ins. Co.* (207 App. Div. 682; affd., without opinion, 241 N. Y. 558). The third of these rules is the only one that can be deemed relevant to the present case. It reads: " When at the time of the accident there was an existing disease, which, co-operating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes." Apparently in the *Smith* case the Appellate Division considered this rule applicable to defeat a recovery where from the statement of facts it seems that the death of the assured may have been caused by pre-existing heart disease from which he would have died in the course of a year or more, but death was hastened by the accident. It is significant that in the *Penn* case the Supreme Court of North Carolina was at pains to try to eliminate a consideration of any doctrine of ultimate causation, and criticized some decisions which were based on an application of that theory; nevertheless the first question which confronts us in applying the third rule is what degree of causation is to be understood as indicated by the word " co-operating," and of course the next question (peculiarly applicable to the instant case), is to what degree must a predisposition or an irregularity rise before it becomes a " disease." In answering the question of causation we are somewhat aided by the policy itself. Thus, on the application blank (forming part of the policy), which the assured was asked to and did sign, there was a question (18): " Do you understand that the benefits of this association do not extend * * * to any bodily injury or death happening directly or indirectly in consequence of disease? A. Yes." I think it would

be doing violence to any reasonable interpretation of the contractual significance of the policy to hold that the hemorrhage in the instant case " happened in consequence of a disease." It happened in consequence of the trauma inflicted by the assured, and the condition of the assured was not a disease. (*Eastern District Piece Dye Works* v. *Travelers Insurance Co.*, 234 N. Y. 441, 451, 452.) The testimony of the physicians called as experts was substantially that the perforation of the septum was not a malignant condition; that ordinarily a hemorrhage would not result spontaneously from that condition; that even in case of a person with a wholly normal septum, a hemorrhage might result from a slight trauma, caused, for example, by a rough finger nail. I cannot accept an interpretation of the plaintiff's condition as that of one suffering from a disease. My conclusion may be summed up in saying that in respect to the question of " accident " I think that this case is on all fours with the *Lewis* case. In each case we find a wholly benign or non-malignant irregularity of physical condition; in the one case a simple pimple, in the other a slight perforation of the septum, and in both traumatic interference by the assured with this condition, which produced unexpected and serious results. As to the question of causation, the language of the policy in the *Lewis* case is almost identical with that of the one at bar, and surely it cannot be assumed that the point was overlooked by the Court of Appeals when so clearly presented by the pertinent terms of the policy which are set out in the opinion. I might have contented myself with basing this decision wholly on the *Lewis* case were it not that counsel have presented their respective contentions ably and elaborately, and have urged the importance of this case as a precedent and test case. Under the circumstances I have deemed it appropriate to set forth the reasons which would have led me to the same conclusion in the absence of precedent. Verdict for plaintiff directed in the sum of $350, with $19.25 interest.