HENNI MANSBACHER, Respondent, *v.* PRUDENTIAL INSUR-
ANCE COMPANY OF AMERICA, Appellant.

Argued January 14, 1937; decided March 9, 1937.

*Solon Weit, Joseph G. Telchin* and *Abraham Gruber* for
appellant. As a matter of law, the insured's death,
from having intentionally and voluntarily taken veronal,
was not the result of bodily injuries effected solely through
external, violent and accidental means. (*Appel* v. *Ætna
Life Ins. Co.*, 86 App. Div. 83; 180 N. Y. 514; *Pixley* v.

*Commercial Travelers Mut. Acc. Assn.*, 165 App. Div. 950; 221 N. Y. 545; *Fane* v. *National Association of Ry. Postal Clerks*, 197 App. Div. 145; *Barnstead* v. *Commercial Travelers Mut. Acc. Assn.*, 204 App. Div. 473; *Gould* v. *Travelers Ins. Co.*, 244 App. Div. 274; 270 N. Y. 584; *Caldwell* v. *Travelers Ins. Co.,* 305 Mo. 619; *United States Mut. Acc. Assn.* v. *Barry*, 131 U. S. 100; *Landress* v. *Phœnix Mut. Life Ins. Co.*, 291 U. S. 491; *Naggy* v. *Provident L. & Acc. Ins. Co.*, 218 Iowa, 694; *Calkins* v. *National Trav. Ben. Assn.*, 200 Iowa, 60; *Lehman* v. *Great Western Acc. Assn.*, 155 Iowa, 737; *Parker* v. *Provident Life & Acc. Ins. Co.*, 178 La. 977.)

*Joseph L. Hochman* and *Emanuel Morganlander* for respondent. The death of the insured resulted from bodily injuries effected solely through external, violent and accidental means within the meaning of the policy. (*Lewis* v. *Ocean Accident & Guaranty Corp.*, 224 N. Y. 18; *Gallagher* v. *Fidelity & Casualty Co.*, 163 App. Div. 556; 221 N. Y. 664; *Hodgson* v. *Preferred Accident Ins. Co.*, 100 Misc. Rep. 155; 182 App. Div. 381; *Dezell* v. *Fidelity & Casualty Co.*, 176 Mo. 253; *Townsend* v. *Commercial Travelers Mut. Acc. Assn.*, 231 N. Y. 148; *Hoenig* v. *N. Y. Life Ins. Co.*, 282 N. Y. Supp. 443; *Schwartz* v. *Commercial Travelers Mut. Acc. Assn.*, 132 Misc. Rep. 200; 227 App. Div. 711; 254 N. Y. 523; *McQueen* v. *Prudential Ins. Co.*, 143 Misc. Rep. 682; *Clancy* v. *John Hancock Mut. Life Ins. Co.*, 282 N. Y. Supp. 510; *Hahn* v. *Home Life Ins. Co.*, 84 S. W. Rep. [2d] 361; *Penfold* v. *Universal Life Ins. Co.*, 85 N. Y. 317; *U. S. Casualty Co.* v. *Griffis*, 186 Ind. 126; *Miller* v. *Fidelity & Cas. Co.*, 97 Fed. Rep. 836; *Lewis* v. *Iowa State Traveling Men's Assn.*, 248 Fed. Rep. 602.)

*J. Alvin Van Bergh* for policyholders, *amici curiæ.* The language of the policy negatives any distinction between "accidental death" and "accidental means." (*Carter* v. *Standard Accident Ins. Co.*, 65 Utah, 465; *Lewis* v. *Ocean Accident & Guarantee Corp.*, 224 N. Y. 18;

*Jensma* v. *Sun Life Assur. Co.*, 64 Fed. Rep. [2d] 457; *Zurich* v. *Flickanger*, 33 Fed. Rep. [2d] 853; *Dezell* v. *Fidelity & Casualty Co.*, 176 Mo. 253; *Brown* v. *Continental Cas. Co.*, 161 La. 229; *Carter* v. *Standard Accident Ins. Co.*, 65 Utah, 465; *Ætna Life Ins. Co.* v. *Kent*, 73 Fed. Rep. [2d] 685; *U. S. Mutual Accident Assn.* v. *Barry*, 131 U. S. 100; *Gustafson* v. *N. Y. Life Ins. Co.*, 55 Fed. Rep. [2d] 235; *McQueen* v. *Prudential Ins. Co.*, 143 Misc. Rep. 682; *Maryland Ins. Co.* v. *Massey*, 38 Fed. Rep. [2d] 724; *Schwartz* v. *Commercial Travelers Mut. Acc. Assn.*, 254 N. Y. 523; *Gohlke* v. *Hawkeye Commercial Men's Assn.*, 198 Iowa, 144; *Ashley* v. *Agricultural Life Ins. Co.*, 241 Mich. 441.)

CRANE, Ch. J. The plaintiff, a widow, brought this action as beneficiary under a policy of life insurance issued by the defendant, wherein her deceased husband, Paul Mansbacher, was the insured. The policy provided for $2,000 life insurance which was paid to the plaintiff after the insured's death, and $2,000 " Accidental Death Benefit."

The insured died on January 3, 1934, by accidentally having taken an overdose of veronal. His death was not intentional, and, therefore, was accidental. The family doctor, about two weeks before the insured's death, had advised him to take one and a half tablets each morning and evening to cure his sleeplessness. This amounted to a total of fifteen grains per day. About two years before the insured had also taken veronal for an earache. On the morning of December 31, 1933, Mr. Mansbacher was suffering from earache and, not finding any aspirin in the home, went to an adjoining apartment occupied by friends, to see if they had any. Not being successful in obtaining aspirin, he told his wife he would take veronal, which he did, apparently to an excessive amount which resulted in his death three days later.

His death was found by the trial court to be accidental, not intentional. The evidence of friends and associates as well as the circumstances surrounding the occurrence justified the trial court in concluding that the case was

not one of suicide. The death was accidental, but the insurance company claims that although the death may have been an accident, it was not occasioned by " accidental means." The policy in large letters refers to *Accidental Death Benefit.* The clause referring to this coverage is headed " Accidental Death Benefit " and provides for the payment of $2,000. *Accidental Death Benefit,* if the death of the insured occurred " as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means \* \* \* provided, however, that no *Accidental Death Benefit* shall be payable if the death of the insured resulted from suicide — whether sane or insane." Other exceptions are mentioned not now material.

Any one reading this policy would take it to mean — would understand it as meaning — that the insurance company would pay $2,000 for death caused solely by accident through external means; if death is caused by any external accident the company pays. The only exception, pertinent here, is suicide. The insurance company now emphasizes the words "accidental means," and would have an exception drawn between " accidental death " and " death caused by accidental means " as though any ordinary person seeking a $2,000 policy would understand this logomachy. The large type letters refer to accidental death, and the attention of the insured by the signs and pointings of the company is directed to accidental death. The company now says that this policy does not refer to accidental death; that it has not insured against accidental death; that the accidental death must be caused by an accidental means. In other words, it concedes that the deceased may have taken an overdose of veronal to cure his earache but, as he intended to take veronal, he intended the means of death although he did not intend his death. We have said more than once that insurance policies upon which the public rely for security in death, sickness or accident,

should be plainly written, in understandable English, free from fine distinctions which few can understand until pointed out by lawyers and judges. Accidental death means death by accident, and excludes suicide; death occurring through " accidental means " in this case and under these circumstances is the same as death occurring " by means of an accident.".

The plaintiff's case comes within the coverage of this policy. Her husband intended to take veronal but he never intended to take a lethal dose, nor did he intend to take enough to do him any harm; he desired to get relief from pain, not relief from life. He took too much veronal; it was a mistake, a misstep, an unexpected effect from the use of his prescribed medicine. It was an accident, and must have been an accident unless it was intentional. In other words, if the insured did not intend to kill himself he intended to take enough veronal, as he had done theretofore, to relieve the pain of earache. By mischance he took too much. His death was accidental and, as we use these words in common parlance, we would speak of it as an accidental death. Contracts are to be interpreted in the light of the language which we commonly use and understand; in other words, our common speech. Such at least should be the rule applied to the interpretation of these policies, and which we sometimes refer to as a liberal construction. (*Abrams* v. *Great American Ins. Co.*, 269 N. Y. 90; *Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 N. Y. 303.)

The authorities in this State sustain this conclusion. *Lewis* v. *Ocean Accident & Guarantee Corp.* (224 N. Y. 18). where the puncturing of a pimple on the insured's lips causing death was held to be death by accidental means. Infection resulting from the use of a hypodermic needle was held to be caused by accidental means. (*Marchi* v. *Ætna Life Ins. Co.*, 205 N. Y. 606; *Townsend* v. *Commercial Travelers Mut. Accident Assn.*, 231 N. Y. 148.) Unexpected consequences may constitute accidental means. (See, also, *Gallagher* v. *Fidelity & Casualty*

*Co.*, 163 App. Div. 556; affd., 221 N. Y. 664.) This was death caused by sunstroke, and it was claimed that as the deceased had voluntarily submitted himself to the heat of the sun it was not an accidental means. The courts discarded such strained interpretation and quoted from Richards on the Law of Insurance, 3d ed. (§ 385), wherein it was said that accidental means are those which produce effects which are not their natural and probable consequences. (See, also, *Schwartz* v. *Commercial Travelers Mut. Assn.*, 254 N. Y. 523, affg. 227 App. Div. 711, which affd. 132 Misc. Rep. 200.) Cooley in his Briefs on the Law of Insurance (Vol. 4 [1st ed.], p. 3156) says: " Strictly speaking, a means is accidental perhaps only when disassociated from any human agency, but this narrow interpretation is not recognized in the law of accident insurance." Our lower courts have consistently applied this rule. (See *Hodgson* v. *Preferred Accident Ins. Co.*, 100 Misc. Rep. 155; 182 App. Div. 381.) Instances of the repeated application of this interpretation, showing it to be fairly well understood, may be seen by reference to *Hoenig* v. *New York Life Ins. Co.* (282 N. Y. Supp. 443); *McQueen* v. *Prudential Ins. Co.* (143 Misc. Rep. 682); *Clancy* v. *John Hancock Mutual Life Ins. Co.* (282 N. Y. Supp. 510). There are some cases which have justified the stand taken by the appellant in this case, but we have not followed them in this State. (*Carnes* v. *Iowa State T. M. Assn.*, 106 Iowa, 281; *Lehman* v. *Great Western Accident Assn.*, 155 Iowa, 737.)

The facts differ in most every case. In *Gould* **v.** *Travelers Ins. Co.* (244 App. Div. 274; affd., 270 N. Y. 584) and in *Appel* v. *Ætna Life Ins. Co.* (86 App. Div. 83, affd., 180 N. Y. 514), loss was not due solely to " bodily injuries effected directly and independently of all other causes."

The satisfactory opinion written by the Appellate Division in this case would render it unnecessary for us to add anything further were it not that much reliance

has been placed upon *Pixley* v. *Commercial Travelers Mut. Accident Assn.* (165 App. Div. 950; affd., 221 N. Y. 545), as indicating that our views differ from the courts below. The *Pixley* case was an entirely different case as the conditions specifically stated that the policy should not extend to nor cover injuries of which there should be no external, visible mark on the body of the insured, nor to injuries or death resulting from or caused by a poison taken voluntarily, involuntarily or accidentally. The insured there died from the effects of a dose of morphine from which there was no external, visible mark on the body, and further, it was a poison which, even if taken accidentally, did not bring the case within the terms of the policy.

The reader of this opinion must bear in mind that this court is bound by the finding of the trial court that Mansbacher's death was not suicide. There is some evidence to sustain the finding. We start our opinion from this point — unintentional, accidental death.

For these reasons the judgment below should be affirmed, with costs.

O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur; LEHMAN, J., dissents; FINCH, J., taking no part.

Judgment affirmed.