### SIMPSON v. TRAVELERS INS. CO.
### No. 311.

Circuit Court of Appeals, Second Circuit.

July 7, 1941.

Russell C. Gay, of New York City (Barber, Matters & Gay, Sherwood E. Silliman, and Kermit F. Kip, all of New York City, on the brief), for plaintiff-appellant.

Bernard J. McGlinn, of New York City (Moran, Galli & McGlinn and Louis P. Galli, all of New York City, on the brief), for defendant-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, having received the face amount of a life insurance policy issued by defendant on her husband's life, sues herein for $10,000 as additional or double indemnity payable in the event of the insured's accidental death. On a trial to

a jury, her complaint was dismissed on the merits at the conclusion of her direct case for failure to prove that the insured died from any of the causes for which the additional indemnity was payable.

As the evidence showed, the insured, George S. Simpson, was 52 years of age at the time of his death and prior to July 3, 1939, had regularly enjoyed good health. During that day he had been drinking. Early in the evening a doctor who called to see his invalid mother, finding her somewhat disturbed by his exhilaration, urged him to go to bed. On his request for a sedative, the doctor administered to him a hypodermic injection of "a quarter of morphine and 1/150 of atropine." The next morning Simpson was found by his wife, lying on his back in the same position in which he had been left the night before. He was unconscious and breathing irregularly, his pulse was extremely weak, his pupils were contracted, and his face was almost black. After being given some stimulants, he was moved to a hospital, where he died 15 days later, on July 19, of a putrid empyema of the right side—a pulmonary infection caused by an attack of aspiration pneumonia.

■ Aspiration pneumonia may be contracted from nothing more than a drainage into the lungs of mucus and saliva, which ordinarily contain germs of the disease in infectious quantities; it is not dependent on a victim's peculiar susceptibility. Such drainage will occur in one whose cough reflex is paralyzed, particularly while he is resting in a supine position. Simpson's unconsciousness the night of July 3 fulfilled both these conditions, and upon the evidence the jury would have been entitled to find that the hypodermic injection was the sole proximate cause of his unconsciousness. Plaintiff produced expert testimony to this effect.

■ By the terms of the policy in question, plaintiff is assured payment of the additional indemnity—for which an additional premium was collected—"upon receipt of due proof that the death of the said Insured has resulted from bodily injuries effected directly and independently of all other causes through external, violent and accidental means within ninety days from the date of the accident which shall have caused such injuries and of which, except in the case of drowning or internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, and provided such death does not result from (a) Disease of any kind, directly or indirectly," or from certain other causes not here in point, such as suicide, war, or hazard of aviation. Within the required time defendant received the requisite "due proof," with, among other things, a physician's statement of the causes of death, made out July 24, 1939, in detail amply sufficient to apprise defendant of the claim. This statement itself showed that an autopsy had been performed by the Department of Pathology at the New York Hospital, and that it revealed the "internal injuries" of which Simpson died. Furthermore, the injection of the hypodermic needle must necessarily have made a "visible contusion or wound on the exterior of the body" as evidence of the accident which caused the "internal injuries." This was truly a wound caused by a blow, and not a mere change in bodily appearance, as in Dupee v. Travelers Ins. Co., 253 App.Div. 278, 2 N.Y.S.2d 62, affirmed 278 N.Y. 659, 16 N.E.2d 391. Compare Warbende v. Prudential Ins. Co. of America, 7 Cir., 97 F.2d 749, 753, 117 A.L.R. 760; Huss v. Prudential Ins. Co. of America, D.C.Conn., 37 F. Supp. 364, 366; cases collected 39 A.L.R. 1011. Hence the proof of the nature of the cause was adequate if the cause itself was sufficient within the policy terms.

The immediate cause of Simpson's death was concededly pneumonia, which would itself fall within the excluded category of "disease of any kind," rather than the protected category of "bodily injuries." But the effects of the pneumonia, such as the empyema, were unquestionably "internal injuries"; and they, as well as the pneumonia itself, were merely intervening links in a direct chain of causation beginning with the hypodermic injection and ending with Simpson's death. It has been held in similar circumstances that the event inducing the disease, not the disease itself, was the proximate cause of death. Bailey v. Interstate Casualty Co., 8 App. Div. 127, 40 N.Y.S. 513, affirmed 158 N. Y. 723, 53 N.E. 1123; Mulvihill v. Commercial Casualty Ins. Co., 221 App.Div. 494, 224 N.Y.S. 644, affirmed 248 N.Y. 524, 162 N.E. 510; cf. Order of the United Commercial Travelers of America v. Nicholson, 2 Cir., 9 F.2d 7. Of course, if Simpson had already been suffering from pneumonia, and his condition had been aggravated by an injection, the question would be different. See Reynell v. In-

demnity Ins. Co. of North America, 258 N.Y. 572, 180 N.E. 337. But any peculiar susceptibility to the effects of morphine, even if present in Simpson, being a condition which would cause him difficulty only in exceptional circumstances, would not amount to a pre-existing "disease." Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914.

■ The hypodermic injection was an "external" and "violent" means within the meaning of the additional indemnity clause. Townsend v. Commercial Travelers' Mut. Acc. Ass'n, 231 N.Y. 148, 131 N.E. 871; Paul v. Travelers' Ins. Co., 112 N.Y. 472, 20 N.E. 347, 3 L.R.A. 443, 8 Am.St.Rep. 758. It clearly would have been an "accidental means" if it had led to a fatal blood poisoning. Townsend v. Commercial Travelers' Mut. Acc. Ass'n, supra; Marchi v. Aetna Life Ins. Co., 140 App. Div. 901, 125 N.Y.S. 1130, affirmed 205 N.Y. 606, 98 N.E. 1108; Bailey v. Interstate Casualty Co., supra; see also Lewis v. Ocean Accident & Guarantee Corp., 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129. That it led to pneumonia instead seems entirely irrelevant to its accidental nature. In either instance, the administration of the injection was intentional and deliberate, but the result was unforeseen and undesired. Such miscarriage of a supposed remedy occurred in either case, not because the insured did, or submitted to, anything unintended at the time, but because acts willingly performed bore unknown potentialities. We think, therefore, that no reasonable distinction is to be drawn between Townsend v. Commercial Travelers' Mut. Acc. Ass'n, supra, and the case at bar, and that upon the proof offered, the hypodermic injection could be found to have been the "accidental means" of Simpson's fatal injuries. As the case therefore stood at the close of the plaintiff's evidence, dismissal was improper.

It is true that there have been several New York cases which, considered alone, would make this conclusion somewhat doubtful. In each of these, recovery was denied because the injuries in question were said to be the "accidental result" of intended means, rather than the natural result of "accidental means." Gould v. Travelers' Ins. Co., 244 App.Div. 274, 279 N.Y.S. 892, affirmed 270 N.Y. 584, 1 N.E.2d 341 (internal hemorrhage caused by use of vibrator); Appel v. Aetna Life Ins. Co., 86 App.Div. 83, 83 N.Y.S. 238, af-

firmed 180 N.Y. 514, 72 N.E. 1139 (rupture of appendix during bicycle ride); Barnstead v. Commercial Travelers' Mut. Acc. Ass'n, 204 App.Div. 473, 198 N.Y.S. 416 (poisoning by anesthetic gas); Fane v. National Ass'n of Railway Mail Clerks, 197 App.Div. 145, 188 N.Y.S. 222 (rupture caused by lifting). In Gould v. Travelers' Ins. Co., supra, and Barnstead v. Commercial Travelers' Mut. Acc. Ass'n, supra, the hypodermic-injection cases were distinguished on the ground that the unintended and accidental introduction of germs along with the hypodermic needle, not the injection itself, was the means of the ensuing injuries. This distinction would appear to smack of the sophistical. The same acts introduced both germs and medicine; if deliberate for one purpose, they were deliberate for all purposes. The insured had no thoughts about germs as such. He certainly did not intend to introduce germs which would produce blood poisoning; nor did he intend to introduce morphine in an amount sufficient to produce the effects from which he died. Whatever the validity of the general distinction between "accidental means" and "accidental result," we do not think that the precedent of Townsend v. Commercial Travelers' Mut. Acc. Ass'n, supra, can be so easily brushed aside.

Furthermore, it appears that no such general distinction has ever been recognized by the New York Court of Appeals. In Mansbacher v. Prudential Ins. Co., 273 N.Y. 140, 7 N.E.2d 18, 111 A.L.R. 618, allowing recovery where the insured was poisoned by veronal taken as a sedative, the argument now made by appellee was expressly rejected, as it had been before in Gallagher v. Fidelity & Casualty Co. of New York, 163 App.Div. 556, 148 N.Y.S. 1016, affirmed 221 N.Y. 664, 117 N.E. 1067 (death by sunstroke); and Schwartz v. Commercial Travelers' Mut. Acc. Ass'n, 132 Misc. 200, 229 N.Y.S. 669; Id., 227 App.Div. 711, 236 N.Y.S. 896, affirmed 254 N.Y. 523, 173 N.E. 849 (self-inflicted hemorrhage), and the principle of the two earlier cases was reaffirmed. Mansbacher v. Prudential Ins. Co., supra, 273 N.Y. at pages 144, 145, 7 N.E.2d 18, 111 A.L.R. 618. Gould v. Travelers' Ins. Co., supra, and Appel v. Aetna Life Ins. Co., supra, were said to rest on entirely unrelated grounds, 273 N.Y. at page 145, 7 N.E.2d 18, 111 A.L.R. 618, and the Barnstead and Fane cases, supra, which had

not gone beyond the Appellate Division, were not mentioned.

The judgment must be reversed, and the case remanded for further proceedings not inconsistent with this opinion.