JOSEPHINE M. BURR, Respondent, *v.* COMMERCIAL TRAVELERS. MUTUAL ACCIDENT ASSOCIATION OF AMERICA, Appellant.

Argued February 26, 1946; decided April 18, 1946.

*Moses G. Hubbard, Jr.*, for appellant. I. Death caused solely or partially by overexertion is not a loss "which is the direct and proximate result of and which is caused solely and exclusively by external violent and accidental means." Defendant's motion for a nonsuit and directed verdict should therefore have been granted. (*Wilcox* v. *Mutual Life Ins. Co.*, 265 N. Y. 665; *Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81; *Allendorf* v. *Fidelity & Casualty Co.*, 250 N. Y. 529; *Appel* v. *Aetna Life Ins. Co.*, 86 App. Div. 83, 180 N. Y. 514; *Fane* v. *Nat. Assn. of Railway Postal Clerks*, 197 App. Div. 145; *Niskern* v. *United Brotherhood*, 93 App. Div. 364; *Shanberg* v. *Fidelity & Casualty Co.*, 158 F. 1; *Hastings* v. *Travelers' Ins. Co.*, 190 F. 258; *Johnson* v. *Travelers Insurance Co.*, 269 N. Y. 401; *Landress* v. *Phoenix Ins. Co.*, 291 U. S. 491; *Gould* v. *Travelers Ins. Co.*, 244 App. Div. 274, 270 N. Y. 584.) II. The undisputed and unimpeached autopsy findings were conclusive in establishing advanced heart disease as the cause of death. Motions for nonsuit and a dismissal should have been granted. (*Weber* v. *Third Ave. R. R. Co.*, 12 App. Div. 512; *Ocean Accident & Guarantee Corporation* v. *Moore*, 85 F. 2d 369; *Naseef* v. *Metropolitan Life Ins. Co.*, 230 App. Div. 610; *Buchanan* v. *Belsey*, 65 App. Div. 58; *Ensign* v. *Travelers Ins. Co.*, 193 App. Div. 369, 233 N. Y. 521; *Lalor* v. *City of New York*, 208 N. Y. 431; *Trudnowski* v. *New York Central Railroad Co.*, 220 App. Div. 503.) III. Where pre-existing disease causes or contributes in causing death there can be no recovery. (*Smith* v. *Massachusetts Bonding & Ins. Co.*, 207 App. Div. 682, 241 N. Y. 558; *Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81; *Blum* v. *Fresh Grown Preserves Corp.*, 292 N. Y. 241.) IV. Errors committed by the trial court in his charge to the jury and in passing upon the evidence require reversal. (*Strohm* v. *The N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 305; *Tozer* v. *N. Y. C. R. R. Co.*, 105 N. Y. 617; *Matter of McLaughlin* v. *Curtis-Quillen Co.*, 223 App. Div. 208; *Carolan* v. *Hoe & Co.*, 214 App. Div. 356.)

*C. G. Tennant* and *Robert C. Tennant* for Metropolitan Life Insurance Company, *amicus curiæ*, in support of appellant's position. I. Plaintiff failed to establish that insured's death was caused solely and exclusively by external, violent and accidental means. Death was caused primarily by pre-existing heart disease. (*Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81; *McMartin* v. *Fidelity & Casualty Co.*, 264 N. Y. 220; *Smith* v. *Massachusetts Bonding & Ins. Co.*, 207 App. Div. 682, 241 N. Y. 558; *Reynell* v. *Indemnity Ins. Co.*, 258 N. Y. 572; *Ohringer* v. *Mutual Life Ins. Co.*, 239 App. Div. 897, 264 N. Y. 633; *Allendorf* v. *Fidelity & Casualty Co.*, 223 App. 809, 250 N. Y. 529; *Wilcox* v. *Mutual Life Ins. Co.*, 265 N. Y. 665; *Appel* v. *Aetna Life Ins. Co.*, 86 App. Div. 83.) II. There was error in the admission of evidence and in submitting the case to the jury. (*Lewis* v. *Ocean Acc. & G. Corp.*, 224 N. Y. 18.)

*Joseph P. Leary* and *O. L. Van Horne* for respondent. I. The evidence presented issues of fact for the jury and the verdict for the plaintiff is supported by the evidence. (*Wiesner* v. *City of Albany*, 224 App. Div. 239, 250 N. Y. 551; *Matter of Altschuller* v. *Bressler*, 289 N. Y. 463; *Robison* v. *Lockridge*, 230 App. Div. 389; *Wolfson* v. *Metropolitan Life Ins. Co.*, 289 N. Y. 70; *Gittelson* v. *Mutual Life Ins. Co. of N. Y.*, 266 App. Div. 141; *Wellisch* v. *John Hancock Mut. Life Ins. Co.*, 293 N. Y. 178; *McGrail* v. *Equitable Life Assurance Society*, 292 N. Y. 419; *Hannon* v. *Commercial Travelers Mut. Acc. Assn.*, 268 App. Div. 542.) II. Death was caused solely and exclusively by external, violent and accidental means. (*Matter of Connelly* v. *Hunt Furniture Co.*, 240 N. Y. 83; *Berkowitz* v. *New York Life Insurance Co.*, 256 App. Div. 324; *Meyer* v. *New York Life Insurance Co.*, 249 App. Div. 243; *Mansbacher* v. *Prudential Ins. Co.*, 273 N. Y. 140; *Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N. Y. 81; *Simson* v. *Commercial Travelers Mut. Acc. Assn.*, 263 App. Div. 297, 289 N. Y. 700; *Matter of McCormack* v. *Wood Harmon Warranty Corp.*, 288 N. Y. 614; *Matter of Daley* v. *Bd. of Estimate. of City of N. Y.*, 267 App. Div. 592; *Cambareri* v. *Metropolitan Life Ins. Co.*, 185 Misc. 273; *Mulvihill* v. *Commercial Casualty Ins. Co.*, 221 App. Div. 494, 248 N. Y. 524.) III. No errors were committed by the trial court in the charge. (*Simson* v. *Commercial Travelers Mut. Acc. Assn.*, 263 App. Div. 297, 289 N. Y. 700.)

CONWAY, J. This is an action upon a policy which insured the decedent, Raymond L. Burr, " against loss by accidental means, of life, limb, sight and time ". It insured against losses which were the direct and proximate result of, and which were caused solely and exclusively by, external, violent and accidental means. The decedent became a member of the association on September 9, 1931, and the insurance contract continued until his death on March 6, 1943. On that day, and for some five years prior thereto, the decedent was employed in the United States Bureau of Internal Revenue at Syracuse, N. Y. His duties required him to cover Otsego County. This he did by automobile. His health appeared to be excellent. At the time of his death he had six weeks sick leave due him which he had never taken. In 1942 he had been placed under civil service following a medical examination, and in 1940 he had been examined for life insurance by one of the large New York State companies and had obtained a policy of insurance after a medical examination by a doctor other than the one who had examined him in 1942. He had had one day's illness on the 23d or 24th of February prior to his death. He had never complained of any other sickness or illness.

At about eight o'clock on the morning of March 6th the deceased drove to Oneonta, a distance of fifteen miles, to the revenue office there, so as to arrange for someone to take his place while he went north to Malone for a day or two. He then drove back to Cooperstown, where he lived, and then left with his wife and thirteen-year-old son for Utica so as to take a train for Malone. It was then about 11:30 in the morning. When he left Cooperstown it was snowing lightly. By the time he reached South Columbia, the weather was very bad. By that time travel was possible only upon one half of the roadway. As Mrs. Burr described it: " It was just a one-way drive, the roadway over to Mohawk. We met the snowplow in South Columbia and it wasn't able to go back and open the road. It was just one-way traffic." It was then snowing heavily, it was bitter cold, visibility was poor, and the velocity of the wind was very high. The snow was piled on both sides of the road. After leaving South Columbia on the half of the road which was open, the Burrs met another car coming in the opposite direction at the top of a knoll. It could not be seen until it was upon them, and

the deceased drew out a little to let it go by. The other automobile struck his rear left fender and threw his car into the ditch. The other driver went on, and the deceased attempted to rock his automobile back and forth to see if he could get it out either backwards or forwards. That was impossible. He sat there and waited for someone to drive by who might help him. One car went by without stopping. The deceased finally decided that he would have to go on to some farmhouse to get a shovel. He was gone for some time and then he came back carrying the shovel and walking into the wind, which was so strong that he seemed to be staggering against it. When he entered the car he said that the wind had knocked him out. He sat in the car for fifteen or twenty minutes, again waiting to see if some car would come along so that help might be obtained. By that time the snow was seeping in the windows of the car and in the door. Mrs. Burr testified: "There was almost as much in the car as there was outside." When no one came, the deceased determined that it was necessary for him to get out and attempt to shovel the snow away despite the velocity of the wind. Mrs. Burr put her son's wool scarf over his ears and then pulled his hat down, and he went out and began to use the shovel. The boy got out, too, and finally she opened the door of the car and saw the deceased hit himself or slip and fall against the shovel and then against the rear wheel or rear fender of the car. Mrs. Burr jumped out and the deceased came around to the left side of the car and she helped him in. He sat down, breathed heavily for a moment, and was dead.

The court divided his charge into two parts. The first dealt with accidental means, the second with the provision of the policy requiring that death must be the direct and proximate result of, and be caused solely and exclusively by, external, violent and accidental means. In so dividing his charge the court was quite correct, for the question of whether there was here an accident within the terms of the policy was the primary question to be decided.

The court charged as follows: "Accidental means are those which produce effects which are not their natural and probable consequences. Consequently, if you find from the evidence that Mr. Burr met his death as the result of some unexpected and unforeseen consequences of his efforts to extricate his car from

the snow bank on the day in question, you may find that it was the result of external, violent and accidental means. To be more explicit, if you find that Mr. Burr died as a result of overexposure or overexertion, or by slipping and falling against the shovel and against the car or by a combination of all three and if you further find that he could not have been reasonably expected to anticipate such results from his actions on the day in question, then you may find that the essential accidental means exist.''

Defendant's counsel excepted to that portion of the charge.

Legal scholars have spent much effort in attempts to evolve a sound theory of causation and to explain the nature of an '' accident ''. Philosophers and lexicographers have attempted definition with results which have been productive of immediate criticism. No doubt the average man would find himself at a loss if asked to formulate a written definition of the word. Certainly he would say that the term applied only to an unusual and extraordinary happening; that it must be the result of chance; that the cause must be unanticipated or, if known, the result must be unexpected. We have indicated the '' means '' which a jury could have found caused the bodily injuries resulting in the death of plaintiff's husband, and have pointed out the incidents occurring on that morning which in our opinion would cause the average man to include such means in the term '' accidental '' as used in the policy. Here it was not only the result of such incidents which was unexpected, but a jury could find that the catastrophe was brought about by the intervention of unintended and unexpected means, such as the automobile collision, the blizzard and wind storm, a slip or a twist of the body, resulting in a fall and trauma, placing a strain upon the body which the body could not withstand.

Our guide must be the reasonable expectation and purpose of the ordinary business man when making an insurance contract such as we have here.

'' It is his intention, expressed or fairly to be inferred, that counts. There are times when the law permits us to go far back in tracing events to causes. The inquiry for us is how far the parties to this contract *intended* us to go. The causes within their contemplation are the only causes that concern us.'' (*Bird v. St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 51.)

In *Leyland Shipping Co.* v. *Norwich Union Fire Ins. Society* (118 L. T. 120, 125; [1918] App. Cas. 350) cited with approval in the *Bird* case, it was pointed out that '' causation is not a chain, but a net. At each point, influences, forces, events, precedent and simultaneous, meet, and the radiation from each point extends infinitely.'' Returning to *Bird* v. *St. Paul F. & M. Ins. Co.* (*supra*), we quote further: '' The same cause producing the same effect may be proximate or remote as the contract of the parties seems to place it in light or shadow. That cause is to be held predominant which they would think of as predominant. A common-sense appraisement of everyday forms of speech and modes of thought must tell us when to stop. It is an act of ' judgment as upon a matter of fact ' (*Leyland Shipping Co.* v. *Norwich Fire Ins. Society, supra*).'' See, also, *Lewis* v. *Ocean Acc. & G. Corp.* (224 N. Y. 18, 20, 21); *Silverstein* v. *Metropolitan Life Ins. Co.* (254 N. Y. 81, 86); *Schwartz* v. *Commercial Travelers Mutual Association* (132 Misc. 200, affd. 227 App. Div. 711, affd. 254 N. Y. 523); *Meyer* v. *New York Life Insurance Co.* (249 App. Div. 243).

In this State there is no longer any distinction made between accidental death and death by accidental means, nor between accidental means and accidental results. As was said by Chief Judge CRANE in *Mansbacher* v. *Prudential Ins. Co.* (273 N. Y. 140, 143, 144): '' Accidental death means death by accident, and excludes suicide; death occurring through ' accidental means ' in this case and under these circumstances is the same as death occurring ' by means of an accident '.'' We cited with approval, Richards on the Law of Insurance (3d ed., § 385) to the effect that accidental means are those which produce effects which are not their natural and probable consequences. There we held that, when the clause of coverage was headed '' accidental death benefit '' and it was provided that such benefit would be paid if death occurred '' as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means '', one who died from taking an overdose of veronal was within the policy terms. The trier of the fact had found that self-destruction was not intended by the deceased. We pointed out that insurance policies upon which the public relies for security in case of accident should be plainly written in understandable English '' free

from fine distinctions which few can understand until pointed out by lawyers and judges.'' A distinction between '' accidental means '' and '' accidental results '' is certainly not understood by the average man and he is the one for whom the policy is written. We had already decided in *Gallagher* v. *Fidelity & Casualty Co.* (163 App. Div. 556, affd. 221 N. Y. 664), that sunstroke was a peril insured against under a similar type of policy. It had been urged in that case that since the deceased had voluntarily submitted himself to the heat of the sun, he did not sustain his injury by '' accidental means.'' We declined to adopt that interpretation. The Supreme Court in *Landress* v. *Phoenix Ins. Co.* (291 U. S. 491), reached a contrary conclusion, holding that sunstroke was an '' accidental result '' which was not within the terms of a policy insuring against '' accidental means.'' In the *Mansbacher* case the *Landress* case was cited in the appellant's brief, but we followed our decision in the *Gallagher* case. Still later, in *Adlerblum* v. *Metropolitan Life Ins. Co.* (284 N. Y. 695) the deceased, following the discovery that he had pus in his tonsils, visited a specialist to have them removed. Novocaine was administered to him as a local anesthetic. Paralysis and death followed almost immediately, due to his hypersensitivity to novocaine. This was clearly a case of '' accidental result '' rather than one of '' accidental means '', yet we held it to be within the latter term. The *Adlerblum* case was followed by *Simson* v. *Commercial Travelers Mutual Accident Assn.* (263 App. Div. 297, affd. 289 N. Y. 700), where the insured suffered a hernia as a result of opening a drawer in his desk by the unusual exertion of considerable force after it had become jammed.

As to the second point the court charged as follows: '' Such a finding on your part is not alone sufficient to justify a verdict for the plaintiff, however. You must go further than that and decide whether or not such death was the direct and proximate result of and caused solely and exclusively by such accidental means. Under the provisions of the policy, it must have been the accidental means and the accidental means alone which caused the death if the plaintiff is to recover. If the death was the result of a heart condition, even though that heart condition may have been aggravated by the accident, there can be no recovery. If at the time of the accident there was a pre-existing

disease as the defendant claims which, cooperating with the accident, resulted in the death of Mr. Burr, the accident cannot be considered as the sole and exclusive cause of death and the defendant is not liable.

      \*    \*    \*    ●    ●    ●    ●

" Who is right and who is wrong is for you to determine from the evidence submitted to you. I should tell you, however, that, if there was a pre-existing heart condition and if it had developed to such an extent that it was the cause or a contributing cause of death, then there can be no recovery. If, on the other hand, this heart condition was so insignificant that it would not be characterized in the common speech of man as a serious departure from normal health, then even though its existence resulted in a frailty of the heart, a predisposition to an occlusion or other mischief which resulted fatally when there was superimposed upon it a heart spasm induced by some violent means, then there still may be a recovery."

Since the jury found a verdict in favor of the plaintiff and the Appellate Division has affirmed, all the facts and inferences therefrom necessary to sustain the verdict have been found in plaintiff's favor. It was made clear to the jury by that charge that if the death was the result of a pre-existing disease, even though that may have been aggravated by the accident, there could be no recovery, because then the accident could not be considered as the sole and exclusive cause of death. It would appear, when the two portions of the charge are read together, that the jury must have found that there was no pre-existing disease and that the deceased died " as a result of overexposure or overexertion, or by slipping and falling against the shovel and against the car or by a combination of all three " without the existence of any pre-existing disease. It is not possible on this record for us to say that, as a matter of law, it was necessary for the jury to adopt the testimony as to the condition of the deceased upon autopsy following exhumation as against opinion evidence that those findings did not portray and could not correctly have portrayed the actual condition of the coronary arteries of the deceased when he was alive on the 6th day of March, 1943. There is testimony that the autopsy, performed two and one-half months after death, disclosed conditions then existing in the body of the deceased with reference to his heart

and arteries. Upon those facts some opinion testimony was presented on behalf of defendant. On the other side, there were facts as to physical examinations of deceased during his life covering a period of nearly two and one-half years immediately prior to his death, together with testimony as to the nature and extent of the work done by him for a considerable period. Upon those facts opinion testimony on behalf of plaintiff was given. There was presented a question of fact which the jury resolved in favor of the plaintiff. That finding having been affirmed, we cannot say as a matter of law that there was no evidence to support it.

It is true that the trial court in the portion of its charge quoted (*supra,* p. 301) used the word " overexertion." In this State we have not permitted recovery under a policy insuring against a loss " which is the direct and proximate result of and which is caused solely and exclusively by external, violent and accidental means " when the act was the natural and customary act of a householder in or about his house, or of·a workman within the scope of his duties in his calling. (*Allendorf* v. *Fidelity & Casualty Co.,* 250 N. Y. 529; *Silverstein* v. *Metropolitan Life Ins. Co.,* 254 N. Y. 81, 85; *Wilcox* v. *Mutual Life Ins. Co.,* 265 N. Y. 665; see, also, *Fane* v. *National Assn. of Railway Postal Clerks,* 197 App. Div. 145; *Niskern* v. *United Brotherhood,* 93 App. Div. 364; *Appel* v. *Aetna Life Insurance Co.,* 86 App. Div. 83, affd. 180 N. Y. 514.)

It seems quite clear here, however, that on the facts presented, a chain of causation was set in motion beginning with the *auto- mobile accident* in the course of and brought about by travel in a very heavy snow and wind storm, followed in turn by what may be termed an emergency resulting from the fact that the deceased had his wife and thirteen-year-old son with him at a time when the cold was bitter and the automobile was being filled with sifting snow, and it was necessary for the deceased to act to protect his family. The court referred in conclusory terms and in the disjunctive to possible causes of death after correctly stating the applicable law as quoted (*supra,* p. 301), but neither the court nor the jury on this record could have understood the word " overexertion " in the sense in which it might have been used in the *Allendorf* and *Wilcox* cases. This case is no more comparable to the conventional overexer-

tion case than if the deceased had, by an accident, been thrown into a pit and in endeavoring to clamber out in order to save his life had died by reason of overexertion in climbing, or had been thrown by an accident into the water and had died from overexertion in attempting to swim ashore.

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER and DYE, JJ., concur; MEDALIE, J., deceased.

Judgment affirmed.