MARGARET McMARTIN, Individually, Appellant, Impleaded with MARGARET McMARTIN and Another, as Executors, etc., of JAMES McMARTIN, Deceased, Plaintiffs, v. THE FIDELITY AND CASUALTY COMPANY OF NEW YORK, Respondent.

Third Department, November 14, 1933.

T. *Cuthell Calderwood* [*Lawrence B. Mc Kelvey* and *Brenton Taylor* of counsel], for the appellant.

*Ainsworth & Sullivan* [*John J. Conners, Jr.,* and *Warner M. Bouck* of counsel], for the respondent.

HEFFERNAN, J. The principal question which this appeal presents relates to the construction of one of the provisions of an accident policy issued by respondent to one McMartin. By that contract respondent agreed to pay to appellant, McMartin's widow, the sum of $7,500 in the event that the insured died as the result of bodily injuries accidentally sustained, " directly and independently of all other causes."

At the close of her case appellant was nonsuited on the ground that death was not caused solely through accidental means.

In reviewing the ruling of the trial court appellant is entitled not only to the most favorable interpretation of the testimony adduced by her, but to the benefit, as well, of the most favorable inferences which may reasonably be drawn from that testimony; and judgment of nonsuit may not be sustained in any case in which, by any logical process of reasoning, an issue of fact may be found.

The deceased was an agent of a life insurance company and used his automobile in the performance of his duties. On the evening of November 20, 1931, while driving his car from Albany to his home in Johnstown he crashed into the rear of an unlighted three and one-half ton motor truck which was parked on the roadside. So terrific was the impact that the truck was pushed a distance of twenty feet and the front of the automobile was practically demolished. Immediately after the crash deceased was found lying on the roadside, bleeding from his nose and mouth, and complaining of great pain and agony. While being hurried by ambulance to the hospital he was continuously " complaining of pain in his chest." Upon arrival at the hospital the physician who administered temporary relief testified that deceased was " complaining of great pain in his chest," and that " at each expiratory excursion he would grunt with pain. He grunted, complained of it and asked for relief." Indicating with his hand that part of his chest which points to the junction of the upper and middle third of the sternum and the adjoining ribs on each side, he advised the physician of the situs of the pain, and the latter found upon applying pressure that " the slightest touch would aggravate his pain." This doctor also testified that decedent's chest condition was the result of " direct violence." Morphine was administered to relieve the pain, and three silk sutures were inserted to close the bleeding point and an X-ray was ordered taken. Doctor Sarno, decedent's family physician, then took charge of the case. He testified that the X-ray pictures taken the night of the accident showed the result of a violent blow upon the chest — a separation of the third right and left costal cartilages — the ends of the ribs from the breast-bone — and also some widening of the shadow in the region of the great muscle of the heart. In describing the condition of his patient after the accident the doctor said he found the heart action good and that decedent was suffering from a moderate degree of shock which was the direct result of the accident. Very soon after there developed evidence of trouble in the intestinal and urinal tracts. These conditions were the direct result of the shock. Failure of elimination produced poisons in decedent's system, the blood absorbing them and carrying them to all parts of the body. As a result of the poison all the organs of the body were more or less weakened and their function was lessened. Decedent never left his bed in the hospital and died on December tenth following, being slightly irrational during the last ten days and in a state of coma during the greater part of the three days immediately preceding his death. The doctor unequivocally stated that decedent's death was caused by the injuries received in the

accident independently of all other causes. Doctor Kennedy, called in consultation after decedent had been in the hospital about a week, testified that the immediate cause of death was nephritis, and that that condition resulted from the accident he suffered. Admitting that nephritis, or inflammation of the kidneys, was necessarily a condition or disease which existed before the accident, he declared it to be his opinion that the injuries to the chest had activated and accelerated that condition of disease " so that he died sooner than he would have died from that disease."

It, therefore, conclusively appears that decedent suffered a terrible blow in a very serious accident — a blow of such crushing force that it separated the ends of the ribs from the sternum; an injury which he himself told his physician he had received from striking the steering wheel.

At the time of the accident decedent was almost seventy years of age. The evidence shows that up to that time, to all outward appearances, he was in unusually good health. He was active, energetic and worked continuously — sleeping well, eating well and complaining of no physical discomfort — a man of whom his associates, his family and his physician say there was no observable change in his condition as the years passed by. In fact, Doctor Sarno swore that but twice in the eight or nine years prior to the accident was it necessary to see decedent professionally — once six or seven years back when he sustained a fracture of the wrist while cranking his motor and the other in August, 1930, when there was an attack of appendicitis from which there was a good recovery and without the necessity of operation. On the last occasion the doctor testified that he made a thorough examination of the decedent and " aside from the evidence of appendicitis there were no clinical evidence of other diseases."

It is the contention of respondent that deceased was suffering from several chronic progressive ailments at the time the accident occurred and that it was these ailments in conjunction with the injuries that caused death. In the death certificate Doctor Sarno gave as the primary cause nephrosclerosis, arterio type. When questioned by respondent's counsel he declared that the disease had " moderately advanced." An autopsy was performed. Doctor Sarno's attention was called to certain conditions which it disclosed. The autopsy led to the discovery that the left coronary artery was thickened and narrowed and somewhat calcified, indicating a condition generally known as " hardening of the arteries." This was not claimed as a cause of death. There were also certain adhesions in the intestinal tract, some inflammation of the prostate gland as well as the nephritis. True indeed the doctor admitted

that these conditions existed prior to the accident and that they, together with the accident, produced death. Reading his testimony as a whole, however, it is quite evident that in his opinion these maladies would not have produced death at that time, nor probably for years, except for the shock. Certain rulings of the trial judge bearing on this subject and on the death certificate will be discussed later.

No rule in the interpretation of a policy of insurance is more firmly fixed than that which declares that all questions as to the meaning of words or phrases must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to the indemnity, which, in making the contract, it was his object to secure. (*Rickerson* v. *Hartford Fire Ins. Co.*, 149 N. Y. 307.) The doctrine is firmly established that inasmuch as an accident insurance policy, whatever may be its form, is intended by the parties to give indemnity for accidental injury, the courts will always go as far as they can to hold the insurer liable, unless in order to do so it is necessary to make a new contract for the parties. (*Houlihan* v. *Preferred Accident Ins. Co.*, 196 N. Y. 337.)

With this rule in mind, let us measure this contract as it was understood by the insured, having for our guide " the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." (*Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47; *Goldstein* v. *Standard Accident Insurance Co.*, 236 id. 178.) And, in the consideration of this appeal, which involves the review of testimony to be construed in the light most favorable to appellant and with every reasonable intendment cast into the scales in her favor, let us consider just what was the intention of her husband when he contracted for this policy. Surely he did not intend, understand or even suspect that, if he were seriously injured in an automobile collision, to the extent disclosed in this record, his widow would be deprived of the indemnity because doctors, having discovered as a result of an autopsy that he was suffering from maladies, serious it is true and progressive, but nevertheless, dormant and unknown to that time, would solemnly say that his death was not due to the accident, but was partially due to these diseases. It is not reasonable to suppose that he had any such conception of his contract or that he had any reason to believe that under such circumstances the company would be permitted to disclaim liability. Common sense and fair dealing compel the conclusion that it is entirely out of keeping with " the reasonable expectation and purpose of the ordinary business man " that when he is injured, as decedent was, his widow may not recover upon the policy because forsooth he was afflicted

with certain maladies probably existent in most people who have reached the age of three score and ten, upon the claim that these conditions were contributing factors in his death and that had they not been present the blow might not have killed him.

Under the settled rule of construction applicable to insurance contracts, it is declared in Corpus Juris (Vol. 1, 452) that "The insurer is accordingly held liable where the accident can be considered as the proximate cause of death, although disease may may have been present as a secondary cause, or where the death is the reasonable and natural consequence of the injury, although disease may have supervened, or where the accident is the true cause of death or injury and the disease but the occasion. So also if death results from the accident, the fact that but for weakness or infirmities produced by former illness or disease it would not have been fatal will not prevent a recovery."

This statement of the law is supported by decisions from many jurisdictions. (*Freeman* v. *Mercantile Accident Assn.*, 156 Mass. 351; *Wehle* v. *U. S. Mutual Accident Assn.*, 11 Misc. 36; affd., 153 N. Y. 116; *Schumacher* v. *G. E. C. & I. Co.*, 197 id. 58; *Equitable Life Assurance Society* v. *Gratiot*, 82 A. L. R. 1397; *Driskell* v. *United States Health & Accident Ins. Co.*, 117 Mo. App. 362; *Runyon* v. *Commonwealth Casualty Co.*, 9 N. J. Misc. 487; *Continental Casualty Co.*, v. *Lloyd*, 165 Ind. 52; *Cretney* v. *Woodman Accident Co.*, 196 Wis. 29; *Fetter* v. *Fidelity & Casualty Co.*, 174 Mo. 256.) We quote from *Freeman* v. *Mercantile Accident Assn.* (*supra*) a sentence of most pertinent significance: "An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health has been different; and this is so, as well when death comes through the medium of a disease directly induced by the injury, as when the injury immediately interrupts the vital processes."

This conclusion of the Massachusetts courts has become a fixed and definite part of our jurisprudence. (*Bailey* v. *Interstate Casualty Co.*, 8 App. Div. 127; affd., 158 N. Y. 723; *Lewis* v. *Ocean Acc. & G. Corp.*, 224 id. 18; *Marchi* v. *Ætna Life Ins. Co.*, 140 App. Div. 901.) The principle asserted in the *Freeman* case is the basis of a later decision in Massachusetts (*Leland* v. *United Com'l Travelers of America*, 233 Mass. 558), which the Court of Appeals approved in *Silverstein* v. *Metropolitan Life Ins. Co.* (254 N. Y. 81).

It is, therefore, a fair and reasonable inference from all the evidence that this accident killed McMartin because he was unable to withstand the shock which followed it. The reason for such inability is wholly irrelevant. The cause of death was a question

for determination by a jury. It seems to us that the true test is "not what doctrine of causation shall be applied, * * * but rather what is the intention of the parties," as stated by Mr. Justice BIJUR in *Schwartz* v. *Commercial Travelers Mutual Assn.* (132 Misc. 200; affd., 227 App. Div. 711; affd., 254 N. Y. 523).

To sustain this judgment respondent relies on *Silverstein* v. *Metropolitan Life Ins. Co.* (*supra*) and *Reynell* v. *Indemnity Insurance Co. of North America* (258 N. Y. 572). These cases are distinguishable. The *Silverstein* case when properly analyzed is not an authority against appellant. In its basic reasoning it presents the strongest possible argument in support of her contention. In that case the sole question was as to whether an ulcer which had weakened the wall of the stomach or abdomen so that a blow caused peritonitis and resulted in death was or was not the cause of death within the meaning of a policy which excluded death caused wholly or partly by "disease or bodily or mental infirmity." It is true that in his opinion Chief Judge CARDOZO draws a distinction between " active disease " and " a frail general condition." It is to be noted that the court in that case cited with approval those cases where recovery has not been denied " to the sufferer from hernia who has had a predisposition to rupture because the inguinal canal was not closed as it ought to have been [*Collins* v. *Cas. Co.*, 224 Mass. 327], or to one whose hip has been fractured because his bones have become brittle with the advent of old age. [*Taylor* v. *N. Y. Life Ins. Co.*, 176 Minn. 171.] " This case might very well rest upon the broad principle stated at the close of the opinion, where, after reiterating the rule that our guide in such cases must be " ' the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract,' " the court said: " ' We are to follow the chain of causation so far, and so far only, as the parties meant that we should follow it. " The causes within their contemplation are the only causes that concern us " ' (*Goldstein* v. *Standard Acc. Ins. Co.*, *supra*)."

The facts in the *Reynell* case, where the complaint was dismissed, are so dissimilar from our case that it is without value as an authority. The evidence shows that the accident in that case was of a very trivial character. The deceased showed no mark or bruise of any kind indicating injury. The accident occurred at eleven A. M.; no doctor was called; at two-fifteen P. M., deceased left on a business trip and carried his two traveling bags weighing thirty-five pounds each. He was absent ten days with no proof of any illness during that period. Upon his return he became ill, a physician was called and the patient died a few days later. The proof showed that he was and had been for a long time suffering

from goiter, diabetes and heart trouble. The cause of death " was given as hyperthyroidism and the contributing cause diabetes and myocarditis." No such situation is presented in this case.

We are, therefore, of the opinion that the learned trial justice erred in granting the motion for a nonsuit. In doing so he apparently predicated entirely too much upon one or two phrases used in the *Silverstein* case for the purposes of illustration and argument, and treated that case as an authority in support of the respondent when as a matter of fact it is a direct and positive authority in support of appellant's contention.

Several rulings of the trial court should be considered. Doctor Kennedy stated that although nephritis was the immediate cause of death nevertheless that condition had, in his opinion, " resulted from the accident which he suffered." He was then permitted to state that there was nothing about the condition of nephritis which, in his opinion, would have resulted in death on the 10th day of December, 1931, had Mr. McMartin not been involved in an accident; and, in answer to a question by the court, he explained that he would not have died in such a short period of time had it not been for the accident. Then the following occurred: " Mr. McKelvey to witness: Q. And is there any way in which you can tell how long he would have lived had it not been for the accident? A. No, sir. Q. Then may I take it that, in your opinion, he might have lived years had it not been for the accident? Defendant's counsel objected to the question as incompetent, irrelevant, immaterial and improper and leading and suggestive. Objection sustained. Q. State whether or not, doctor, men with that condition do frequently live for years? Defendant's counsel objected to the question as immaterial. Objection sustained. Q. According to your own experience? Same objection and same ruling. Mr. McKelvey: On the sole ground it is immaterial I take it. Exception." We believe this evidence was competent and that the trial justice erred in declining to receive it. (*Moon* v. *Order of United Commercial Travelers*, 96 Neb. 65; *Lickleider* v. *Iowa State Traveling Men's Assn.*, 184 Iowa, 423; 3 A. L. R. 1295.)

The trial court also erred in refusing to allow Doctor Sarno to state whether the conditions noted in the certificate of death or disclosed by the autopsy were or were not unusual in men of decedent's age. Evidence such as this has been held relevant. (*Clarke* v. *New Amsterdam Casualty Co.*, 180 Cal. 76; *Western Indemnity Co.* v. *MacKechnie*, 214 S. W. 456.)

We are also of the opinion that the trial court erred in not permitting Doctor Sarno to explain his answers to the questions as to primary and contributing causes referred to in the death certifi-

cate and the sense in which he made certain statements contained in that document. The doctor was cross-examined at length regarding the contents of the certificate and hence there should have been no restriction upon any reasonable attempt to explain the sense in which certain terms were used, especially in view of the fact that the statute (Public Health Law, § 377) provides that " the certificate of death shall contain such information and in such form as the State Commissioner of Health may prescribe."

It is likewise our opinion that the doctor should have been permitted to answer the question propounded by appellant's counsel as to whether or not he was still of the opinion, notwithstanding the death certificate, that the accident was the cause of death.

For these reasons the judgment appealed from should be reversed on the law and the facts and a new trial granted, with costs to the appellant to abide the event.

HILL, P. J., RHODES and CRAPSER, JJ., concur; BLISS, J., concurs in the result.

Judgment reversed on the law and facts and new trial granted, with costs to the appellant to abide the event.