THOMAS H. MCGRAIL, Respondent, *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

Third Department, March 4, 1942.

*Whalen, McNamee, Creble & Nichols* [*Charles E. Nichols* of counsel], for the appellant.

*Hun, Parker & Reilly* [*Michael D. Reilly* of counsel], for the respondent.

CRAPSER, J. The defendant issued to the plaintiff, a physician and surgeon, a combined accident and health policy which was in full force and effect at the time of the accident insuring him against loss " resulting directly and independently of all other causes, from bodily injuries effected during the term of this policy solely through external, violent and accidental means, and against disability from disease."

Parts I and II are concerned with payment of indemnity for death or disability caused by accident while part III is concerned with indemnity for disability caused by disease. Part I, providing for indemnity for accidental death, is not here involved. Part II provides for the payment of weekly indemnity for total disability in paragraph A and for partial disability in paragraph B.

Paragraph A of part II provides for the payment of weekly indemnity of fifty dollars for not exceeding 200 consecutive weeks " if such injuries shall wholly and continuously disable the insured from date of accident and prevent him from performing any and every duty pertaining to his occupation," and for the payment of the same weekly indemnity for 200 weeks so long as he shall be wholly and continuously disabled from engaging in any occupation or employment for wage or profit. It is under paragraph A that recovery here has been had.

Paragraph B provided for payment for partial disability " if such injuries shall continuously disable the insured from date of accident and prevent him from performing one or more important daily duties pertaining to his occupation, or for like continuous disability following total disability."

Part III contains provision for the payment of indemnity for disability caused by disease, the weekly amount being fifty dollars for periods of house confinement and twenty-five dollars for periods of non-house confinement. It was under part III that the second cause of action was based, which cause of action has been discontinued and is not involved.

The policy further provides that the insurance under parts I and II shall not cover accident, injury, disability, death or other loss caused directly or indirectly, wholly or partly by bodily or mental infirmity or by any other kind of disease.

The complaint contains two causes of action, the first to recover payment of fifty dollars per week from April 1, 1940, as the result of an accident on February 9, 1940, which it is alleged caused a dislocated shoulder, coronary thrombosis and traumatic neuritis, and that solely by reason of said coronary thrombosis, traumatic neuritis and dislocated shoulder the plaintiff has been wholly and continuously since the accident totally disabled; and the second to

recover fifty dollars per week from April 1, 1940, for periods of house confinement and twenty-five dollars per week for periods of non-house confinement resulting from the total disability by reason of the disease of coronary thrombosis and neuritis which had its inception and onset in 1940 prior to April second.

At the trial of the action the plaintiff elected at the close of his case to stand upon his first cause of action and discontinued the second.

The defendant moved for a dismissal of the first cause of action at the close of the plaintiff's case and again at the close of the entire case and the motion was denied.

The defendant does not dispute that the plaintiff had been totally disabled since April 1, 1940, or that he was entitled to disability payment under the health provisions of the policy but contended that he was not entitled to the accident provisions because (1) the accident was not the sole cause of the disability, and (2) plaintiff was not totally disabled continuously since February 9, 1940, the date of the accident.

On February 9, 1940, the plaintiff, a physician and surgeon, fifty-five years of age, who lived at 637 New Scotland avenue and who had an office at 35 Clinton avenue in the city of Albany and ninety per cent of whose work was surgical and ten per cent general medicine, in the evening while walking from his garage to his house, a distance of about forty or fifty feet, carrying two medical bags in his right hand, slipped upon the ice and fell backwards and struck the back of his chest and head and sustained a dislocation of his right shoulder. He was not rendered unconscious but felt pain in his right shoulder, right arm, breast and chest. His wife assisted him to arise, pulled his right arm which he thought was dislocated and he felt it go back into place. He went into the house feeling very bad and sat down for about a half hour near the door and then went to bed.

While sitting by the door he complained of severe pains in his right shoulder and in his breast and chest. His wife helped him upstairs to his room and into bed and about two o'clock in the morning he was in pain and his wife came into his room and gave him some brandy which he instructed her to do and some nitroglycerine. He was having difficulty in breathing and he felt severe pain radiating down his left arm. He stayed in bed the next day until noon when he arose from bed. The pain again became severe in the left arm and breast and he went back to bed and got up again about three-thirty and rested in a chair and felt a little better and decided to go and have an X-ray taken for the purpose of determining whether there was any fracture in his right shoulder or

sternum. He went to Dr. Prentice on State street who took an X-ray at seven o'clock and no fracture was found.

He did not consult a doctor again until the twenty-sixth of February when he went to Dr. Prentice again for an X-ray because he was having pain in the chest. The X-ray taken then was negative and Dr. Prentice suggested that he have an electrocardiogram.

On February tenth, after the accident, he went to see a man who lived above his office, on whom he had operated the night of the accident. He saw Mrs. Dunn on Colonie street for whom he had reduced a fracture of an arm on the morning of the day he had the accident; this was on the tenth, about half-past five. He also saw another patient on the tenth on whom he had formerly operated. Altogether he saw three patients on February tenth.

Between the tenth of February and the twenty-third of February he saw a patient on Lenox avenue at her home and he saw a Mr. Hess sometime in March on Main avenue; the call to come and see him was by telephone.

After the twenty-third of February he went to his office for six days during which time he gave reports to attorneys and insurance men about cases that he had had. He made out one death certificate right after the twenty-third of February. On the twenty-third he saw three patients at his office. Between the twenty-third of February and the first of April he went to his office on about six occasions for business and he performed part of his duties after the tenth day of February. After the twenty-third of February the plaintiff went to his office in the evening.

On February twenty-fifth, while returning to his home from his office, he was taken with an attack and stopped at a tavern for a drink of brandy and he took some nitro-glycerine which on occasions is administered for heart attacks. The next day he went back to Dr. Prentice who X-rayed his chest and who sent him to Dr. Hoffman on the following day for an electrocardiogram of his heart. He consulted no doctor from the time he had the X-ray taken of his shoulder on February tenth until he went back for another X-ray on February twenty-sixth. He did not know that he had a heart condition until Dr. Hunt telephoned him from Saratoga on the eighteenth of April. Between the twenty-third of February and the first of April he saw about three patients in his office but at no time after the accident did he do any surgical work.

On March 1, 1940, the plaintiff filed with the defendant a written notice of disability in which he stated that the nature of his illness was luxation of right shoulder joint, traumatic neuritis, left ventricular preponderance and enlargement of the heart; that the injury to his shoulder occurred on February ninth and the heart

condition on February twenty-sixth, and that he had been confined to the house for twelve days, with eight days of non-house confinement, and that the date he first returned to work was " partial on different dates."

On April sixth he filed with the defendant another form, in which he stated that his illness began on February ninth and that the first date he was able to resume any of the duties of his occupation was February twenty-third at two o'clock P. M.

On the same day he filed another form, in which he again stated the date and hour when he resumed any of the duties of his occupation was February twenty-third and that he had forty-one days of total disability and sixteen days of partial disability. He also stated that he had not been able to do any surgical work and that he had taken no new calls or consultations.

The defendant issued a check for $275 to the plaintiff, attached to which was a statement showing that it represented one week and five days' total disability and five weeks and four days' partial disability and a surgical fee of fifty dollars. It was dated April 24, 1940. The statement covered a period of fifty-one days and represented the period from February ninth to April first. The plaintiff was informed to use the check without prejudice to any rights that he might deem himself to have for the collection of additional indemnity under the policy but so far the plaintiff has not made any additional claim for any indemnity and the claim for which he has recovered in this action is from April first on.

On the trial the plaintiff claimed that his disability was due to coronary thrombosis which had been caused by the accident of February ninth.

Dr. Gorham, one of the plaintiff's heart specialists, testified that arteriosclerosis is a disease which everyone over forty has in varying degrees. Dr. Gorham testified that he believed the accident of February ninth was " a competent producing cause of the condition from which [the plaintiff] is now suffering, providing we suppose that there was pre-existing disease in the coronary arteries." He further testified that it was possible that the coronary thrombosis may have occurred on the twenty-fifth of February and that if it had occurred on the twenty-fifth of February it would not be related to the accident of February ninth as the time element was too great.

Dr. Hoffman took electrocardiograms on February 27, 1940, which showed a coronary thrombosis or coronary occlusion and coronary infarction and that they indicated a condition which would have caused the plaintiff to discontinue work indefinitely. He testified in answer to a hypothetical question that it was his

opinion that the coronary thrombosis was the result of the fall of February ninth. He testified that in order to have coronary thrombosis of the coronary artery there has got to be a coronary sclerotic condition of the coronary artery and that such a condition is a disease and that if the plaintiff sustained a coronary thrombosis in February, 1940, at that time those coronary arteries were sclerosed. He testified that there was some disease at the time of the fall and that at the time of the fall the plaintiff had a sclerotic condition of the coronary artery and that it had existed for some time prior to the fall.

Dr. Hunt was sworn as a specialist for the plaintiff and in answer to a hypothetical question he testified that the fall of February ninth was a competent producing cause of coronary thrombosis from which the plaintiff was suffering. He also testified that arteriosclerosis is a disease of the coronary arteries and that it was his opinion that the fall which the plaintiff sustained would not produce coronary thrombosis without the presence of a sclerotic condition in the arteries.

The burden was upon the plaintiff to establish that his disability resulted from the accident exclusively and independently of all other causes and that it was not caused directly or indirectly, wholly or partly, by disease and that such injuries wholly and continuously disabled the plaintiff from the date of the accident and prevented him from performing any and every duty pertaining to his occupation. (*McMartin* v. *Fidelity & Casualty Co.*, 264 N. Y. 220; *Whitlatch* v. *Fidelity & Casualty Co.*, 149 id. 45, 48; *Weil* v. *Globe Indemnity Co.*, 179 App. Div. 166; *Landon* v. *Preferred Accident Ins. Co.*, 43 id. 487; *Lavine* v. *Indemnity Ins. Co.*, 260 N. Y. 399, 410.)

From the plaintiff's own testimony it must be found that the injuries suffered by the plaintiff on the 9th of February, 1940, did not wholly and continuously disable him from the date of the accident and prevent him from performing any and every duty pertaining to his occupation.

The medical testimony is to the effect that coronary thrombosis could not occur without a previously existing disease of arteriosclerosis in the coronary arteries and that the fall was an aggravation of such existing diseased condition which produced the coronary thrombosis.

Provisions such as those contained in this policy have been construed to mean exactly what they say, which is that unless the insured is totally disabled from the date of the accident there can be no recovery. (*Johnson* v. *Travelers Ins. Co.*, 269 N. Y. 401, 407.)

The plaintiff was not totally disabled between February 9, 1940, and April 1, 1940, and no claim is made other than the claim that has already been paid. He engaged in some of the duties of his profession during that period of time. A clause of the policy provides for indemnity for disability and it requires that the disability, independently of all other causes, shall wholly and continuously disable the insured from the date of the accident from performing any duties pertaining to his occupation. This language excludes indemnity suffered in a second period following one in which there has been no complete disability. (*Irwin* v. *Travelers Ins. Co.*, 243 App. Div. 377; *McMartin* v. *Fidelity & Casualty Co.*, 264 N. Y. 220; *Silverstein* v. *Metropolitan Life Ins. Co.*, 254 id. 81.)

The judgment for the plaintiff should be reversed and the complaint dismissed, with costs.

HILL, P. J., SCHENCK and FOSTER, JJ., concur; HEFFERNAN, J., dissents, and votes to affirm the judgment. The evidence is sufficient to sustain the finding of the jury that the accident was the sole cause of plaintiff's disability.

Judgment reversed and complaint dismissed, with costs.