RAYMOND J. HANNON, as Executor of GEORGE B. LEE, Deceased, Respondent, *v.* COMMERCIAL TRAVELERS MUTUAL ACCIDENT ASSOCIATION OF AMERICA, Appellant.

RAYMOND J. HANNON, as Executor of GEORGE B. LEE, Deceased, Respondent, *v.* AMERICAN MOTORISTS INSURANCE COMPANY, Appellant.

Third Department, December 29, 1944.

*Whalen, McNamee, Creble & Nichols,* attorneys (*Charles E. Nichols* of counsel), for appellant The Commercial Travelers Mutual Accident Association of America.

*Murphy, Aldrich, Guy & Broderick,* attorneys (*John H. Broderick* of counsel), for appellant American Motorists Insurance Company.

*McChesney & Kenney,* attorneys (*Thomas V. Kenney* of counsel), for respondent.

HILL, P. J. The defendant, The Commercial Travelers Mutual Accident Association of America, issued an accident policy to plaintiff's testator, agreeing to pay in the event of the death of testator if the same was " the direct and proximate result of and which is caused solely and exclusively by external, violent and accidental means "; and defendant American Motorists Insurance Company issued a like policy, agreeing to pay if the testator came to his death from bodily injuries resulting ". solely through accidental means, which bodily injuries or their effects shall not be caused wholly or in part, directly or indirectly, by any disease, defect or infirmity ". Each company appeals from a judgment based upon the verdict of the jury in actions brought upon the policies.

The testator received serious bodily injuries on March 2, 1943, when the delivery truck loaded with cases which he was driving, ran off the highway and against a telephone pole. He

was conscious when found but fast under the steering wheel, held by the cases in the car which had been thrown against him. He was extricated from the car, taken to the office of a physician and then to a hospital where he died on March 12th. The hospital records state that the patient was in mild shock but fully conscious and responsive, and quote him " that he was driving his truck when he suddenly was seized with a dizzy spell and lost control of his car "; further that there was trauma of the face, laceration of the lip and bleeding from the mouth, and complaint of severe pain in the right chest. Four or five ribs were broken. In connection with the autopsy there was an entry, " parotitis, acute right; sclerosis, moderate, of left ventricular mycardium ", also a recital as to fractured ribs, ecchymoses and lacerations. There was a direct issue between the medical witnesses called by the respective parties. Plaintiff's physician attributed death to a secondary infection of the right parotid gland occasioned by the laceration of the face, mouth and lips. Physicians on behalf of the defendant insurance companies attributed death to testator's diseased heart, stating that while the traumatic injuries may have contributed, they would not have caused death except for the condition of the heart.

Two quite recent authorities with which this court is acquainted, enunciate the rule in this class of cases. *McMartin* v. *Fidelity & Casualty Co.* (264 N. Y. 220, revg. 239 App. Div. 296) reversed a judgment in favor of the insured and relieved the insurer of liability because the court found from the evidence as a contributing cause of death " an idiosyncratic condition of mind or body predisposing the insured to injury " (p. 222) so acute as to constitute a disease. *McGrail* v. *Equitable Life Assurance Society* (292 N. Y. 419, revg. 263 App. Div. 439) sustained a recovery had at the trial because the court found that " at the worst, the jury were authorized to find upon the evidence that the condition of plaintiff's arteries at the time of the accident was merely a predisposing tendency which, as a consequence of the accident, ripened into a thrombosis." Under the evidence and the jury's verdict we choose and classify this case as belonging to the " predisposing tendency " rather than the " idiosyncratic " group, and if there was no other issue, the judgment should be affirmed. Further reference to the long line of cases on this subject seems unnecessary.

There is, however, another question which counsel say has not been directly considered in this State. It involves the happening of the accident. As earlier stated, the hospital notes contain the following: " States that he was driving his truck

when he suddenly was seized with a dizzy spell and lost control of his car." There is evidence that at an earlier time he had suffered from dizziness, a physician had found irregularities in the functioning of his heart and had advised that he not drive an automobile. No one saw the accident. The car with the decedent in it was found by a passerby against a telephone pole adjacent to a two-strip concrete road, which was substantially straight. From the foregoing a jury could have drawn an inference that the accident itself might have been caused by disease or infirmity. The court charged in this connection that if the jury found the automobile truck ran off the road and into the telephone pole, the collision with the pole was an accident within the terms of the policies "even though some physical condition that he had theretofore, such as dizziness or some heart condition, may have caused him to go off the road." Appellants argue that the charge was an incorrect statement of the law. They cite as authorities in other jurisdictions, *New York Life Ins. Co.* v. *Doerksen* (64 F. 2d 240, 75 F. 2d 96) also *Mutual Life Ins. Co.* v. *Hassing* (134 F. 2d 714). In the foregoing cases similar provisions in policies of insurance were under consideration and sustain appellants' contention that if the accidental injury was received wholly or in part because of disease and infirmity, a recovery may not be had.

Respondent calls our attention to cases defining accident and accidental means, such as *Mansbacher* v. *Prudential Ins. Co.* (273 N. Y. 140) where by mistake an insured took an overdose of veronal causing his death, and *Lewis* v. *Ocean Acc. & G. Corp.* (224 N. Y. 18) where death resulted from an infection caused by puncturing a pimple on the insured's lip, and *Townsend* v. *Comcl. Travelers Mut. Ac. Assn.* (231 N. Y. 148) where infection resulted from the use of a hypodermic needle. In these cases under similar contracts recoveries were sustained. The theory of liability is distinguishable from the obligation which would arise if an insured came to his death, say, by falling from a roof or precipice, the fall being occasioned solely by internal disease such as faintness following a heart attack. Under the latter condition, it does not seem that it may be successfully argued that the death resulted "exclusively [from] external * * * means ". It did result from violence, and it was an accident, but not one caused by external means.

We do not discuss the probative force or admissibility of the hearsay statement in the hospital record as to the cause of the accident. Under the charge in this case, the jury was directed to return a verdict for the insured if death was caused by

external, violent and accidental means, irrespective of the connection between the insured's internal diseased condition and the accident. That issue should have been litigated and presented to the jury under these contracts which make the policies payable only in the event that death was caused by external, violent and accidental means. We are unable to say as matter of law that the company is required to pay if the death was the result of an accident that happened because of the diseased physical condition of the insured.

The judgments should be reversed on the law and facts and new trials ordered.

FOSTER, J. (concurring in part). I concur insofar as reversal is concerned, but I think the complaint should be dismissed. Plaintiff had the burden to establish that decedent came to his death as the " * * * direct and proximate result of and which is caused solely and exclusively by external, violent and accidental means ". Even the chief medical witness called for the plaintiff did not testify to that. He said there were several contributing factors, including arteriosclerosis. The autopsy, and there could scarcely be better proof, revealed marked sclerosis of the coronary arteries, one artery being narrowed to one-tenth of its normal size. That condition, in my judgment, was something more than merely a " predisposing tendency." Since sclerosis, on plaintiff's own proof, was a contributing cause of death, plaintiff failed to sustain the burden of proof so as to come within the terms of the policy and the complaint should be dismissed.

BLISS, J. (dissenting). I concur in that portion of the opinion of the Presiding Justice, which holds that this case belongs to the " predisposing tendency " rather than the " idiosyncratic " group.

I dissent, however, from his interpretation of the terms of these policies by which he concludes that if the decedent's dizziness or heart condition caused the automobile to run off the road, then the plaintiff may not recover. Under the terms of the policy in the action against Commercial Travelers Mutual Accident Association of America, it was provided that the association insured decedent against loss of life " which is the direct and proximate result of and which is caused solely and exclusively by external, violent and accidental means ". Thus it is the loss of life which must be caused by external means and not the accident as is argued in the opinion of our Presiding Justice. Perhaps dizziness was one of the reasons why the insured lost

control of his car and it ran off the road into a telephone pole and he was injured. It was an accident nevertheless. Dizziness does not usually result thus catastrophically. The antithesis of accidental is intentional. Surely the insured did not intend to be injured, nor could such serious results be reasonably anticipated from a dizzy spell. Such an unexpected effect was fortuitous. This was an unusual combination of circumstances, the dizzy spell while driving an automobile, accompanied by the running off the road, striking the pole and the injuries. It was truly catastrophic. In the policy it is the means which must be external and not the causes of the accident. The opinion of Circuit Judge TAFT in *Manufacturers' Accident Indemnity Co.* v. *Dorgan* (58 F. 945) seems highly appropriate: "If the deceased suffered death by drowning, no matter what was the cause of his falling into the water, whether disease or slipping, the drowning in such case, would be the proximate and sole cause of the disability or death, unless it appeared that death would have been the result, even had there been no water at hand to fall into. The disease would be but the condition; the drowning would be the moving, sole and proximate cause."

I believe that the charge of the Trial Justice was correct in this regard and that the judgment should not be reversed.

I therefore vote for affirmance.

HEFFERNAN and BREWSTER, JJ., concur with HILL, P. J.; FOSTER, J., concurs in part, with a memorandum; BLISS, J., dissents in a separate memorandum.

Judgments reversed on the law and facts and a new trial ordered.