SHIRLEY GARTEN, Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY, Respondent.— Plaintiff, as beneficiary, sues to recover the accidental death benefit provided for in a supplementary contract annexed to a policy of insurance issued by defendant upon the life of plaintiff's husband. The contract provides for the payment of double indemnity upon proof that the insured died " as the result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means." At the close of plaintiff's case the court dismissed the complaint on the merits and plaintiff appeals. Judgment reversed on the law and the facts and a new trial granted, with costs to appellant to abide the event. Lazansky, P. J., Carswell, and Johnston JJ., concur, with the following memorandum: On December 7, 1939, the insured suffered certain injuries about the head, including a fracture of the nose, resulting either from a fight or a fall. He was disfigured and decided to enter the hospital, not for treatment of his injuries, but for a tonsillectomy. He entered the hospital on December 8, 1939, and the following morning was operated on. That afternoon he had a hemorrhage and an interne succeeded in stopping the blood. On the evening of the same day he had another hemorrhage and the doctor who performed the operation was summoned. The insured was removed to the operating room and an anesthetic — evipal — was administered and the doctor tied up the blood vessel and succeeded in stopping the hemorrhage. The insured died on the operating table. The proof showed that the injuries sustained by the insured on December 7, 1939, were insufficient to cause death; that nothing " unusual " occurred at the tonsillectomy; that prior to and at the time the insured was on the operating table he was gagging, choking and vomiting blood; that the usual dose of evipal was administered by an interne under the supervision of the attending physician; that the effect of the anesthetic was to paralyze the epiglottis, permitting blood and vomit to enter the larynx or trachea, thereby causing asphyxiation, which resulted in death. The assistant medical examiner, who authorized a doctor attached to the hospital to perform an autopsy and who examined the body, testified that the cause of death was hemorrhage following the tonsillectomy. He admitted that neither the larynx nor the trachea was examined. In our opinion an issue of fact was presented as to whether the insured's death was the result of bodily injuries sustained through external, violent and accidental means. (*Burch* v. *Prudential Ins. Co. of America*, 250 App. Div. 450; *Mansbacher* v.

*Prudential Ins. Co.*, 273 N. Y. 140.) Hagarty and Adel, JJ., dissent and vote to affirm the judgment, with the following memorandum: As we read this record, there is no proof that vomit entered the larynx or trachea. The only proof is that, following the operation, " blood was running down into his larynx, into his stomach and every place " and that that was a sufficient cause of death. Bleeding to the extent of causing death, following an operation, may not be deemed " injuries sustained through external, violent and accidental means " within the terms of the policy.