Anna B. Rosenthal, Appellant, v. Mutual Life Insurance Company of New York, Respondent.

First Department, January 20, 1959.

*Leon Wasserman* of counsel (*Norman Meltzer* with him on the brief), for appellant.

*Edward A. Voegeli* of counsel (*Haughton Bell,* attorney), for respondent.

STEVENS, J. Plaintiff appeals from a judgment entered on a directed verdict after dismissal of the complaint on motion of the defendant.

This was an action to recover double indemnity benefits under two policies of life insurance issued to the deceased husband of the plaintiff beneficiary.

The defendant rested at the conclusion of the plaintiff's case without offering any proof. The medical testimony therefore is uncontradicted. In this posture of the case there is a simple

question whether there was sufficient evidence to warrant submission of the case to the jury.

There was medical testimony that the deceased, age 65, was in normal health prior to the operation for removal of his gall bladder. The operation was completed apparently without incident. Thereafter complications developed, initially mistakenly diagnosed as a paralytic ileus which is a malfunction of the intestine due to the reaction of the body to the operation or to the anesthesia.

Six or seven days later when it became apparent that the condition was not a paralytic ileus the patient was X-rayed. The X ray disclosed '' an intestinal obstruction due to a kinking of the bowel '', which caused an insufficiency of the kidneys. This kink was '' caused by adhesions to the site of his previous operation, that is, the site in the liver bed from which his gall bladder was removed ''. An operation was performed and the kink removed. The obstruction however had caused irreversible damage to the kidneys and the patient died seven days later of uremic poisoning. An autopsy disclosed that new adhesions had formed again in the same area.

This adhesion for which an operation was performed was caused by the fact that the small intestine had moved or '' slipped '' about four inches from its normal position.

The testimony was that a paralytic ileus was not unusual following an operation for the removal of a gall bladder, but that paralytic ileus '' is a reversible thing,'' in other words '' [i]n a few days, the intestine regains its activity '' and '' one does not have to do anything about it.'' In fact, one year earlier after an operation to correct a prostate condition, the deceased suffered a paralytic ileus, which later corrected itself. The testimony was that adhesions may follow any operation. The treating physician who was present at the gall bladder operation, described the condition which developed here as '' an unexpected occurrence,'' '' a very unusual thing.''

The operating surgeon whose qualifications were not questioned, testified to having performed some 2,000 gall bladder operations and that he had never before encountered such a condition. He asserted there was no way of determining before the operation if such would happen and that it was '' unique ''. There was some explanation offered why this obstruction being mechanical rather than functional was considered a rare occurrence.

The pathologist testified that he did not remember ever seeing an obstruction of the type found on the deceased when the autopsy was performed.

The medical witnesses agreed that the result was neither designed, intended nor could it be reasonably foreseen.

Under New York law there is no distinction made between death occurring by accidental means and accidental death nor between accidental means and accidental results. (*Mansbacher* v. *Prudential Ins. Co. of America*, 273 N. Y. 140; *Burr* v. *Commercial Travelers Mut. Acc. Assn.*, 295 N. Y. 294.) The test to be applied by the courts as to the meaning of the term " accident ", " must be that of the average man [*    *    *] the one that is applied in the common speech of men " (cases cited). " Here, as elsewhere, the law contents itself with probabilities, and declines to wait for certainty before drawing its conclusions." (*Lewis* v. *Ocean Acc. & Guar. Corp.*, 224 N. Y. 18, 21–22.)

Unexpected consequences following an act intentionally or normally done may constitute accidental means. (*Gallagher* v. *Fidelity & Cas. Co. of N. Y.*, 163 App. Div. 556, affd. 221 N. Y. 664 [sunstroke]; *Burch* v. *Prudential Ins. Co. of America*, 250 App. Div. 450 [asphyxiation].) " Whether or not the means is accidental is determined by the character of its effects. Accidental means are those which produce effects which are not their natural and probable consequences." (6 Cooley, Briefs on Insurance [2d ed.], p. 5234; *Burr* v. *Commercial Travelers Mut. Acc. Assn.*, supra, p. 302; cf. *Paul* v. *Traveler's Ins. Co.*, 112 N. Y. 472.)

A hypersensitivity to a condition does not necessarily exclude accidental means. (*Adlerblum* v. *Metropolitan Life Ins. Co.*, 259 App. Div. 859, affd. 284 N. Y. 695.)

There is no doubt that the gall bladder operation set in motion the chain of events which eventually culminated in inefficiency of the kidneys causing uremic poisoning from which the patient died. Where the result which followed is of a type which had not occurred in 2,000 cases one cannot say as a matter of law that it is not an accident or that death did not occur by accidental means. (Cf. *Escoe* v. *Metropolitan Life Ins. Co.*, 178 Misc. 698, 699; Ann. 152 A. L. R. 1288 *et seq.*; *Garten* v. *Metropolitan Life Ins. Co.*, 262 App. Div. 899; 29 Am. Jur., Insurance, § 1001.)

The fact that the deceased suffered some disease of the gall bladder would not bar recovery unless that disease was a major contributing factor, directly or indirectly, to the death, or the policy contained an exclusionary provision to that effect. That, of course, must be determined from the proof. Mere exposure to an operation, voluntarily undertaken, is not a bar, for from

the testimony, the act of volition did not include "foresight of the peril and acceptance of the consequences". Nor are the concepts of disease and accident necessarily exclusive. (*Matter of Connelly* v. *Hunt Furniture Co.*, 240 N. Y. 83, 85, 88; *Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161.)

We do not decide the ultimate fact but only that there was sufficient uncontradicted evidence to warrant submission of the case to the jury. (Cf. *Morgan* v. *Indemnity Ins. Co. of North America*, 302 N. Y. 435; Ann. 52 A. L. R. 2d 1090.) For the jury could well have found this to be an unusual unexpected effect of a known cause, and that death occurred by accidental means or as the result of an accident.

The judgment should be reversed, on the law and the facts, and a new trial ordered, with costs to abide the event.

BOTEIN, P. J. (concurring). I agree that a jury question is presented and that a reversal of the judgment dismissing the complaint and a new trial are indicated. However, I believe that the issue to be presented to the jury, in determining whether there was an accident, does not turn on the unusual or unexpected nature of the result alone.

In an action on a policy the contract provisions must of course control. Double indemnity clauses substantially similar to the one under consideration here have been analyzed and parsed out repeatedly by the courts. Abnormality of result is but one of the elements fixing liability under the policy. In another context, but applicable here, we have said, "[a]n accident, according to generally accepted definitions, is a sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (*Johnson Corp.* v. *Indemnity Ins. Co. of North America*, 6 A D 2d 97, 100). Before the results of a surgical operation may be considered accidental within the terms of the policy, certain requisites must be shown in a claim of this nature.

There should, among other things, be proof of some physical impact on the body — a blow, a scratch or a cut — some form of external interference with normal body function or structure. This would of course exclude disease and organic malfunction not traumatic in origin.

A determinate act, fixed in time and space, should be established as an essential link in the chain of causation. This would exclude progressive deterioration as an originating element, for accident is an event and not a condition, though its consequences may be protracted in effect. (*Jackson* v. *Employers' Liability*

*Assur. Corp.,* 139 Misc. 686, affd. 234 App. Div. 893, affd. 259 N. Y. 559; *Jeffreyes* v. *Sager Co.,* 198 App. Div. 446, affd. 233 N. Y. 535; *Lagowitz* v. *United States Fidelity & Guar. Co.,* 281 N. Y. 876, 878.) As to the operation itself, there should be some evidence of a deviation from the norm in procedure or in result. This excludes those normal operative risks which are voluntarily assumed. Where the operation is performed properly, the question is whether the results are within the scope of normal operative risk. If so, they are deemed to be assumed voluntarily and hence nonaccidental. Some of the more common post-operative consequences, such as shock, heart failure, systemic weakening or pneumonia, may in and of themselves be considered among the foreseeable sequelæ of surgery. The more serious the surgery, the wider the scope of the risk voluntarily assumed.

Finally, there must be causal relationship between operation and result. No matter how unusual the result, we are still concerned with whether its proximate cause was the act of external interference rather than a subsequent organic malfunction.

The existence of accident in this setting is not to be determined by the incidence of similar occurrences — although such experience may be highly influential evidence in making the determination. Automobile collisions occur every day, cases of bubonic plague rarely. The former are nonetheless accidents, the latter are not. If the operation in this case is found to be the proximate cause of intestinal obstruction, an accident may have occurred. If the intestinal displacement and adhesions were the result of an uncommon physical condition or an organic aberration, the death of the insured must be deemed to have occurred from natural causes. While the question is very close, I do not believe it can be held as a matter of law that death here was caused by natural organic malfunction rather than by the accidental results of operative procedures. Whether the average man would regard the result as an accident (*Lewis* v. *Ocean Acc. & Guar. Corp.,* 224 N. Y. 18) is best determined by a jury.

Bastow, J. (dissenting). Simply stated this appeal presents the question as to whether the death of an insured from an intestinal obstruction caused by adhesions following a gall bladder operation is an accidental death within the meaning of a policy provision that such death shall result " directly from bodily injury effected solely through external, violent and

188

accidental means independently and exclusively of all other causes ''. The majority has reached the conclusion that a jury question is presented by the proof. The trial court dismissed the complaint at the close of the evidence holding as a matter of law that death was not due to an accident. In our opinion that decision was correct and the judgment should be affirmed.

In considering the meaning of the words '' accident '' and '' accidental death '' it is noteworthy that the courts of this State have emphasized the necessity for ascribing to them their plain and every-day usage by the ordinary man. Thus — '' His death was accidental and, as we use these words in common parlance, we would speak of it as an accidental death. Contracts are to be interpreted in the light of the language which we commonly use and understand; in other words, our common speech.'' (*Mansbacher* v. *Prudential Ins. Co.*, 273 N. Y. 140, 144.) And again — ''But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man * * *. Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test to be applied by courts '' (*Lewis* v. *Ocean Acc. & Guar. Corp.*, 224 N. Y. 18, 21).

As the present record is read it becomes apparent that plaintiff's case has been proven to a large extent upon medical testimony having to do with the fact that adhesions following such an operation have a low incidence when compared with the total number of gall bladder operations performed or observed. Thus, the operating surgeon testified that he had never encountered a case of adhesions following a gall bladder operation; that it was unusual and unique; that there was no way of determining before the operation that it would occur. This witness, however, agreed that this was a major operation and in all such there are certain operative risks. One of such risks involved in all abdominal operations '' is a possibility that post-operative adhesions can form and cause an obstruction '' and they may occur after a gall bladder operation. The witness was positive that during the operation and post-operative treatment there had been no mistake and that the insured '' died from what is commonly called a post-operative complication ''.

In the light of the foregoing legal principles and this testimony it is submitted that the test is not a mathematical formula as to the number of gall bladder operations a surgeon may have

performed before the first case of adhesions is observed. This would seem to be an erroneous application of the test words " unforeseen ", " unexpected " and " extraordinary." The true test is whether as we use the words in common parlance the average man would speak of the occurrence as an accidental death. " When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means." (CARDOZO, J., dissenting in *Landress* v. *Phoenix Ins. Co.*, 291 U. S. 491, 499.)

It is recognized that the majority of persons approach major surgery with a fear of the unknown. Such apprehension is shared by patient and surgeon alike. In the language of the operating surgeon in this case " anything can happen after an abdominal operation." It is well summarized in the common parlance of the layman by the oft-heard cynical statement that " the operation was a success but the patient died." True it may be that in terms of arithmetic and in the personal experience of any one surgeon such happenings are unusual. But in the instant case the operating surgeon agreed with the statement of a noted text writer in the field that " [i]ntestinal obstructions through the agency of adhesions may occur at any time after operation ". Thus, such an occurrence is foreseeable and not necessarily unexpected even though it does not happen in the great majority of cases.

Decisions by courts in this and other jurisdictions support the view that death by post-operative complications does not fall within the connotation of accidental death as those words are used in common parlance. The issue was passed upon by the Appellate Term (FRANKENTHALER, SHIENTAG and NOONAN, JJ.) of this department in *Bennett* v. *Equitable Life Assur. Soc.* (14 Misc 2d 759). That determination was then affirmed by this court (261 App. Div. 819). Therein it appeared that death ensued as the result of a post-operative pulmonary embolism. A judgment in favor of the insured's beneficiary was reversed and the complaint dismissed. It was held that the cause was neither trivial nor the result unforeseen.

This decision was followed in *Preferred Acc. Ins. Co.* v. *Clark* (144 F. 2d 165) in applying the law of this State to a similar policy provision. There the insured after major surgery for removal of gall bladder and appendix suffered an acute massive pulmonary collapse and died. In reversing a judgment in favor of the beneficiary the court said (pp. 168–169): " Excluding those cases where the condition of the patient is desperate and an operation is resorted to with the hope of possibly saving

his life, we know that death does not ordinarily result from a major abdominal operation. Yet we also know that death does result from complications arising after major abdominal operations in a limited number of cases, and that, while the patient does not expect death, he knows it is a possible eventuality. For example, one who submits to a simple appendectomy, where the condition is not acute, knows that he may be one of a comparatively small number who will die as a result of the operation. He does not expect death but he knows it may occur. In such cases, we do not think an ordinary man would say that the death was accidental. Here, the insured was suffering from a chronic gall bladder ailment. In addition to that, his appendix was seriously involved. He was also suffering from a parenchymatous degeneration of the liver and kidneys. He was 62 years of age. We do not think that the ordinary man, under the attending facts and circumstances, where a major operation in the upper abdominal cavity caused a pulmonary collapse resulting in death, would regard the death as accidental.''

In general we agree with the views expressed in the concurring opinion of the Presiding Justice, but feel that those very views compel the opposite conclusion to that reached. This record is searched in vain for factual material to which the legal principles stated therein might be applied by the triers of the fact upon a new trial. It is suggested that the burden is placed upon the plaintiff of proving a determinative act, fixed in time and place, as an essential link in the chain of causation. Here the proof is clear that following the operation a part of the small intestine adhered to the bed of the gall bladder causing the intestine to kink and become obstructed. A laparotomy was performed and the adhered intestine separated. Following death an autopsy revealed that new adhesions had formed in the same area. The court inquired of the operating surgeon if the latter had any opinion '' as to how it did happen '', to which the witness replied '' Not at all.'' Immediately thereafter the witness said '' as a doctor, I would like to know.''

In sum, the insured died from one of a group of causes denominated as post-operative complications. In our opinion the average man would not say that death was accidental. Speaking in the general language of a layman the danger of such a complication was ever present. It may not have been expected by the attending surgeons but the risk thereof was foreseeable. It was not a mishap that was extraordinary. Neither was it unlooked for as a possible result of such surgery. The incidence of occurrence in this type of operation may be

low but this is insufficient to conclude that an issue of fact is presented.

The judgment should be affirmed.

VALENTE, J., concurs with STEVENS, J.; BOTEIN, P. J., concurs in concurring opinion, in which VALENTE, J., concurs; BASTOW, J., dissents in a dissenting opinion in which BREITEL, J., concurs.

Judgment reversed upon the law and upon the facts, and a new trial ordered, with costs to abide the event.