DANÏEL E. FANE, Appellant, *v.* THE NATIONAL ASSOCIATION OF RAILWAY POSTAL CLERKS, Respondent.

Fourth Department, May 4, 1921.

Insurance — accident insurance — injuries from external, violent and accidental means — rupture received by mail clerk while performing customary work not within policy.

A railway mail clerk who, while engaged in his customary work of piling mail sacks in a car in the usual and ordinary way, suffered a rupture, did not receive an injury within the meaning of a policy of insurance against injuries through external, violent and accidental means.

APPEAL by the plaintiff, Daniel E. Fane, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Cattaraugus on the 5th day of June, 1920, upon the verdict of a jury rendered by direction of the court.

*M. B. Jewell,* for the appellant.

*George H. Pierce* [*George A. Larkin* of counsel], for the respondent.

HUBBS, J.:

The plaintiff in this action was insured by the defendant against personal accidental injuries. The certificate issued by the defendant contained the following clause: " If the holder of this certificate shall receive bodily injuries during the continuance of this certificate through external, violent and accidental means " he shall be entitled to recover, etc. The plaintiff was a railway postal clerk. On the 20th day of October, 1916, at Binghamton, while in the performance of his duties, he was engaged in piling heavy mail bags on a stack seven or eight feet high. While doing that work he strained the covering of his intestines and caused a rupture. An action was brought on the certificate and the jury found that the rupture was caused through external, violent and accidental means within the meaning of the policy. The trial

court set aside the verdict of the jury and directed a verdict for the defendant. The sole question for our consideration is whether or not, under any inference which could be drawn from the evidence, the jury was justified in finding as it did.

There is no dispute in the evidence. The plaintiff testified: " I was lifting a heavy sack of mail to put it way up here, and felt something slip down here; down in my testicle. * * * Q. So that in reaching up you felt this give way? A. Yes, sir." That is all there is of the case. It is undisputed that the plaintiff was engaged in his customary work. There is no claim or pretense that the bag which he was lifting was any heavier than other bags which he had lifted in the same way, or that the pile upon which he was attempting to place it was any higher than usual. It is not claimed that the car gave a sudden lurch or that he slipped, or was pushed or jarred, or that anything out of the ordinary happened. He simply attempted to lift the heavy mail bag in question on to the top of the pile, doing just what he expected to do and what he was accustomed to do, and doing it in the usual and ordinary way. The only thing unusual or unexpected about the whole affair was that the strain of lifting the bag on this particular occasion caused a rupture. From those facts the appellant urges that the rupture was caused " through external, violent and accidental means."

It is undoubtedly true that the act of lifting the mail bag produced an unforeseen consequence, and the consequence might commonly be called an accidental injury, and the result of lifting the bag might be accidental, but the wording of the policy is " through * * * accidental means." The means which the plaintiff used to place the bag were exactly those which he intended to use and precisely those he had used on many other occasions. It cannot be said that the means were accidental. The most that can be said is that the result was accidental. An unexpected result followed, but that result did not follow through accidental means. He was injured from doing what he intended to do and doing it in exactly the way he intended to do it, and the rupture was not the result of accidental means. This conclusion is sustained by many decisions.

One of the leading cases in point arose in this department,

the case of *Appel* v. *Ætna Life Ins. Co.* (86 App. Div. 83; affd., without opinion, 180 N. Y. 514).   The opinion of Mr. Justice McLENNAN in that case, it seems to me, is a complete answer to the appellant's contention in this case.   There the plaintiff's intestate injured his appendix while riding a bicycle by the ordinary exertion of riding without having suffered any fall or shock.   It appeared that the muscles used in the operation of riding the bicycle necessarily rubbed against the appendix and inflamed it.   In the opinion it was said:   " Our attention has not been called to any case which holds, and we have failed to discover any authority for the proposition, that a result which is produced by means, all of which and every detail of which was intended, can be said to have been produced by accidental means, simply because the result which followed the employment of such means, exactly in the manner intended, was different from the result anticipated. In order that the plaintiff may succeed in the case at bar, it is necessary that we should assent to that exact proposition. We think that is not the proper construction or true meaning of the language of the policy in suit."

In the case of *Niskern* v. *United Brotherhood* (93 App. Div. 364) Mr. Justice WILLARD BARTLETT, speaking for the court in the Second Department, expressly approved of the *Appel* case and quotes from the opinion of Mr. Justice McLENNAN. In that case the plaintiff, a carpenter, was suffering from hardening of the blood vessels, and the strain of lifting a heavy timber ruptured a diseased blood vessel.   The court held that there could be no recovery.

Where one suffering from fatty degeneration of the heart ruptures that organ through over-exertion in the ordinary way, the injury is not caused by accidental means.   (*Shanberg* v. *Fidelity & Casualty Co.*, 158 Fed. Rep. 1.)

Where a dilation of the heart was caused by the exertion of a man in raising and lowering himself repeatedly from the arms of a chair, it was held that as the exercise was voluntary and intended there could be no recovery on an accident insurance policy.   (*Hastings* v. *Travelers' Ins. Co.*, 190 Fed. Rep. 258.)

In a case where death resulted from the rupture of an artery caused by the insured in reaching out to close a window,

it was held that there could be no recovery on an accident insurance policy. (*Feder* v. *Iowa State Traveling Men's Association*, 107 Iowa, 538; 43 L. R. A. 693.)

Many more cases, from different jurisdictions, might be cited in support of the same proposition. An interesting case arose in Buffalo, N. Y. A man named Pixley was suffering from neuralgia. He sent to the drug store and purchased morphine tablets. While suffering pain he took the bottle of tablets and poured some into his hand. At the time his hand shook and his face was drawn with pain and covered with perspiration. His housekeeper, who was in the room, asked what he was doing and he told her to leave him alone, that he knew what he was doing. He took the tablets and died as the result of morphine poisoning. The trial court held that the plaintiff had failed to establish a cause of action for injury by accidental means, and granted a nonsuit. The case came to this court and was affirmed by a vote of three to two, without opinion, and was also affirmed in the Court of Appeals, without opinion. The trial court based the nonsuit upon the ground that the deceased intended to take the morphine, that the means were not accidental, but deliberate and intentional, and that only the result was accidental and, therefore, not covered by the policy. (*Pixley* v. *Commercial Travelers Mut. Accident Assn.*, 165 App. Div. 950; affd., 221 N. Y. 545.)

There would be no question but what the trial court in the case at bar was right in directing a verdict for the defendant if it were not for the late case of *Lewis* v. *Ocean Accident & Guarantee Corporation* (224 N. Y. 18). In that case a well, healthy man had a pimple on his lip. It looked like an ordinary pimple. It became larger and inflamed, and the insured consulted a physician. The physician testified that there was a punctured wound in the lip which had inflamed and infected the deeper tissues. The insured died as the result of the inflammation of the brain produced by a germ from the infected pimple. Judge CARDOZO, writing, said: " We think there is testimony from which a jury might find that the pimple had been punctured by some instrument, and that the result of the puncture was an infection of the tissues. If that is what happened, there was an accident.

We have held that infection resulting from the use of a hypodermic needle is caused by ' accidental means ' * * *. The same thing must be true of infection caused by the puncture of a pimple." The judge calls attention to the evidence of the plaintiff's expert to the effect that the entrance of the germ from the skin to the deeper tissues was the result of trauma, and that trauma is almost invariably the cause of such infections, and that the punctured wound was a sign of trauma, and was an adequate cause, or, at least, that the jury might so find.

The case of *Bailey* v. *Interstate Casualty Co.* (8 App. Div. 127; affd., 158 N. Y. 723) was cited in the opinion. The opinion in that case was written by Mr. Justice MERWIN. There a physician injected morphine into his leg, resulting in infection. It was claimed by the defense that the morphine caused the inflammation. It was claimed by the plaintiff that it was caused by a germ. Mr. Justice MERWIN said: " The plaintiff voluntarily injected the morphine, and if that caused the injury it could hardly be accidental. Upon the evidence, however, it might have been found that the injury was in no way attributable to the morphine. If not, then the question would be whether the injury was attributable to the introduction of the needle deeper than was intended and so an irritation produced which induced the inflammation of the cellular tissue, or whether by reason of the needle or skin not being clean, something was, in the act of puncturing, transferred to the wound which induced the resulting condition." It will be seen from the above quotation that the case relied upon by Judge CARDOZO did not hold anything which sustains the appellant's contention in this case.

It seems to me that the *Bailey* case and the *Lewis* case are both clearly distinguishable from the case at bar, and that the principle announced in those cases is simply that where infection is caused by a germ entering a wound and producing an injury, the injury is caused by accidental means. That is far from holding that if a person suffering from heart disease over-exerts himself and dies as the result of the over-exertion, it can be said that he died from accidental means. It is not to be presumed that the Court of Appeals intended to overrule its decision in the case of *Appel* v. *Ætna Life Ins. Co.*, and

the decision in the case of *Pixley* v. *Commercial Travelers Mut. Accident Assn.*, without even calling attention to those decisions in the opinion.

The case was properly decided at the Trial Term and the judgment should be affirmed, with costs.

All concur; KRUSE, P. J., not sitting.

Judgment affirmed, with costs.