Seymour Boyers, J.
This is an action to recover accident disability benefits under a policy of insurance issued by the defendant. The plaintiff was paid benefits for a period of one year since defendant contends the disability was caused by “ sickness ” within the meaning of the policy. The plaintiff makes claim for ‘ ‘ accident ’ ’ disability benefits for a five-year period contending that his bodily injury was caused by an “ accident ” within the terms of the policy.
At the trial, plaintiff testified that on June 30, 1969 he was employed as a bagel maker at the Hempstead Bagel Bakery. As part of his job, he normally was required to lift 100-pound sacks of flour ‘ ‘ waist high ’ ’ into a flour sifter. The flour sifter machine located in the basement of the premises mechanically brings the flour up to a large mixing machine in the main area of the shop. On June 30,1969, the flour sifter was out of order, thus requiring plaintiff and a helper to lift the 100-lb. sacks of flour directly into the mixing machine which meant raising the sacks “ chest high ”. At about 11:00 a.m. in the morning of June 30, immediately after lifting a bag of flour into the mixing machine, the plaintiff felt a pain in his chest, a squeezing or tightening sensation, he started to perspire, and then stopped work and went home.
*936 The plaintiff visited his family physician, a Dr. Juffey, a general practitioner, on June 30, 1969 and informed the doctor of the pains in his chest on lifting the flour bags. The doctor who testified at the trial examined the plaintiff and did EKG-’s and repeat EKG’s, and advised the plaintiff to take bed rest and not to return to work until July 22, 1969. Dr. Juffey also gave the plainitff nitroglycerin and other medication, and since the doctor was going on vacation he advised the plaintiff that if he had any further problems to contact Dr. Martin Heilbraun, a cardiologist. At that time Dr. Juffey’s diagnosis was angina pectoris due to coronary insufficiency. The doctor further testified that in his opinion the flour bag lifting incident was the precipitating factor of the coronary insufficiency and the congestive heart failure which then developed.
The plaintiff testified that he returned to work on July 21, and that on July 22, he again suffered pains in the chest and immediately made an appointment to see Dr. Heilbraun. Dr. Heilbraun testified at the trial that he first saw the plaintiff on July 22, 1969. He received a history of the plaintiff lifting the 100-pound bags of flour chest high on June 30,1969, having chest pains, going to Dr. Juffey, staying out of work until July 21, 1969, returning to work July 21, and on July 22, 1969, sustaining new chest pains and coming to him. Dr. Heilbraun’s diagnosis was arteriosclerotic heart disease, acute coronary insufficiency, congestive heart failure and right bundle branch block. The plaintiff was hospitalized at Manhasset Medical Center under the care of Dr. Heilbraun. Date of admission, July 22, 1969 and date of discharge from the hospital was August 8, 1969. The plaintiff had a causally related recurrence causing hospitalization in December of 1969. Plaintiff had a prior history of an angina attack in 1960, followed by no interim history of pain until June 30, 1969. Dr. Heilbraun maintained that while the basic arteriosclerotic heart disease may have pre-existed the lifting episode of June 30, 1969, in his opinion, the heart pain suffered by plaintiff on June 30, 1969 was causally related to the lifting of the 100-pound flour bags. It was further the testimony of Dr. Heilbraun that electrical tests showed that the plaintiff sustained more damage than a mere episode of coronary insufficiency and heart pain and he characterized the damage as congestive heart failure. The doctor stated that the plaintiff’s condition was permanent and that the permanency was causally related to the lifting episode of June 30, 1969. On further examination, the doctor maintained that prolonged coronary insufficiency such as occurred here can lead to heart failure, and did so here and is causally related.
*937 The court is presented with the issues of whether plaintiff’s disability was caused by an “ accident ’ ’ under the terms of the policy of insurance, and if so, whether the injury was caused ‘ ‘ directly and independently of all other causes.”
The “Definitions” section of the subject insurance policy defines injury as follows: “ ‘ Injury ’ means bodily injury caused by an accident occurring while this policy is in force and resulting directly and independently of all other causes in loss covered by this policy.”
In Burr v. Commercial Travelers Mut. Acc. Assn. (295 N. Y. 294, 301), the following definition of “accident” was given: ‘ ‘ Legal scholars have spent much effort in attempts to evolve a sound theory of causation and to explain the nature of an ‘ accident ’. Philosophers and lexicographers have attempted definition with results which have been productive of immediate criticism. No doubt the average man would find himself at a loss if asked to formulate a written definition of the word. Certainly he would say that the term applied only to an unusual and extraordinary happening; that it must be the result of chance; that the cause must be unanticipated or, if known, the result must be unexpected.”
At the end of the plaintiff’s case, the defendant moved to dismiss on the ground that plaintiff failed to establish a prima facie case. Upon the court reserving decision on said motion, defendant rested without offering evidence or witnesses on its behalf. The defendant then renewed its motion asserting that plaintiff’s claim is not based on an “ accident ” within the terms of the policy and cited cases which defendant contends would indicate that plaintff has not crossed the threshold of proving that his injuries, if any, were caused by an accident.
In a review of several cases, the defendant seeks, to rely heavily on the case of Wilcox v. Mutual Life Ins. Co. of N. Y. (265 N. Y. 665). In Wilcox, the deceased was a foreman of a construction gang and his crew was engaged in raising a heavy electrical transformer. Certain planks which were being used to guide the transformer as it was being raised became displaced and the deceased and a fellow worker reached up and endeavored to push them into proper position. Shortly thereafter the deceased died as the result of a break in the inner coat of the aorta leading to the heart.
The claim instituted in Wilcox and the insurance policy terms are quite different from the instant case. In Wilcox, the claim was for double indemnity benefits under the terms of a policy wherein the injury or death resulted from ‘ ‘ external violent *938 and accidental means. ’ ’ The term 11 injury ’ ’ as defined by the insurance policy sued upon in the instant case does not include the language of “ external, violent and accidental means ” as that language is understood by the average man.
In Lewis v. Ocean Acc. & Guar. Corp. (224 N. Y. 18,.21), where death was due to a virulent and lethal infection introduced into the body by puncturing a pimple on the lip with an instrument. Judge Cakdozo, who wrote the decision, in discussing the rationale of the decision stated: ‘ ‘ Probably it is true to say that in the strictest sense and dealing with the region of physical nature, there is no such thing as an accident. * * * But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man (Brintons v. Turvey [L. R. 1905 A. C. 230, 233]; Ismay, Imrie & Co. v. Williamson, L. R. 1908 A. C. 437, 440). Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test — the one that is applied in the common speech of men — is also the test to be applied by courts (U. S. Mutual Acc. Assn. v. Barry, 131 U. S. 100; * * * Hiers v. Hull & Co., 178 App. Div. 350, 352; * * * [italics supplied]).”
Defendant argues that a stress-caused heart attack under the facts of the instant case was not the result of an accident within the terms of the policy and cites among other cases, the case of Fane v. National Assn. of Ry. Mail Clerics (197 App. Div. 145) in support of its position.
In Fane, plaintiff was a railway postal clerk who was ruptured while lifting a heavy sack of mail. The plaintiff made claim under a policy similar to the one here in issue. The Appellate Division in affirming a dismissal stated (p. 146): “ It is undisputed that the plaintiff was engaged in his customary work. There is no claim or pretense that the bag which he was lifting was any heavier than other bags which he had lifted in the same way, or that the pile upon which he was attempting to place it was any higher than usual.”
The court in Fane appears to say that no accident occurred within the terms of the policy because plaintiff was doing what he meant to do, and doing it the way he meant to do it. Would the decision have been otherwise if the bag had been heavier than other bags, or if the pile had been higher than usual?
The uncontroverted testimony in the instant case is that, on June 30, 1969, the plaintiff was confronted with a breakdown of the flour sifter unit requiring plaintiff to directly lift the 100-pound flour sack into the mixing machine. Where the plain *939 tiff had normally lifted the flour sacks “ waist ” high into the flour sifter, it was now necessary to lift the sacks “ chest ” high directly into the mixing machine. This meant that the flour sacks had to be lifted higher than usual and the effort required was greater than usual as a result of the accidental breakdown of the flour sifter unit.
This court concludes that the injury and disability of the plaintiff was caused by an accident within the meaning of the policy.
The remaining issue for consideration is whether the injury was caused “ directly and independently of all other causes.”
Defendant argues that the burden is on the plaintiff to prove that his condition was caused by accident directly and independently of all other causes, and, that as a matter of law, the plaintiff failed to prove that arteriosclerotic heart disease did not contribute to his condition.
The uncontroverted medical testimony of plaintiff’s cardiologist, Dr. Heilbraun, was that in his medical opinion, based upon the history and sequence of events with a reasonable degree of medical certainty, the exertion in the form of the lifting of the heavy bag of flour on June 30, 1969, was the causal effect in bringing on the acute coronary insufficiency and congestive heart failure. The doctor further testified that in his opinion, the plaintiff’s condition as a result of the lifting episode is permanent, and he characterized the plaintiff as being totally disabled to perform his work. The defendant offered no medical testimony to rebut the opinion of plaintiff’s -doctors.
The plaintiff’s cardiologist when further questioned about the history of an angina attack by plaintiff in 1960, testified that although plaintiff may have suffered coronary insufficiency in 1960, he evidently had a nine-year hiatus in which he was symptom free, worked and did well, until the episode of lifting the heavy bag of flour chest high on June 30,1969. In referring to the arteriosclerotic condition of plaintiff, Dr. Heilbraun said that “ all of us” are undergoing progressive arteriosclerotic changes; more or less in degree, depending upon the age of the person and other physical characteristics.
In Silverstein v. Metropolitan Life Ins. Co. (254 N. Y. 81,84,85) the Court of Appeals stated: “ in a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. * * * £ Our guide is the reasonable *940 expectation and purpose of the ordinary business man when making an ordinary business contract ’ * * * a policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or Hercules. * * * ‘If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state ’.”
In McGrail v. Equitable Life Assur. Soc. (292 N. Y. 419) the court held that the jury in the lower court was entitled to find that previously existing arteriosclerosis was a predisposing tendency which, as a consequence of an accident, ripened into a disabling coronary thrombosis.
Thus, if there was a pre-existing arteriosclerotic heart disease which contributed to the disability, it would not preclude recovery under the policy involved in the instant case where this court finds that the heart disease at the time of the accident was a dormant condition made active by the accident. (Eisser v. Commercial Travelers, 247 App. Div. 727, affd. N. Y. 581; Burr v. Commercial Travelers, 295 N. Y. 294, supra; Amend v. Equitable Life Assur. Co. of U. S., N. Y. L. J., Feb. 29,1972, p. 18, col. 4.)
Accordingly, the court finds that the plaintiff sustained an injury on June 30, 1969 caused by an accident which injury was caused directly and independently of all other causes, and denies the motions to dismiss the plaintiff’s complaint and grants judgment in the amount sued on together with interest.